**Benny C. ROSS, Plaintiff,**

v.

**DELTA DRILLING COMPANY,**
**Defendant.**

**Civ. A. No. 7621, Division D.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 28, 1962.

Thomas B. Wheeler, New Orleans, La., J. Minos Simon, Lafayette, La., for plaintiff.

Christovich & Kearney, A. R. Christovich, Jr., New Orleans, La., for defendant.

AINSWORTH, District Judge.

Plaintiff has sued under the Jones Act (46 U.S.C.A. § 688) and the General Maritime Law, alternatively under the Louisiana Workmen's Compensation Act, alleging that he was injured on December 16, 1957, aboard the converted LST HUMBLE ST–6, while working for respondent as a derrick hand. He contends that his duties required him to handle equipment, materials and supplies on the ST–6 and engage in other activities historically done by seamen.

The case was originally tried by a jury and ended in a mistrial, after which the parties stipulated that the matter be submitted to the court for decision without a

jury on the record of testimony made at the jury trial.

The question presented is one which is constantly recurring in this jurisdiction as to whether an oil-field worker engaged in drilling of the submerged lands or tidelands of the Gulf of Mexico on the outer continental shelf is a seaman entitled to recover under the Jones Act. Respondent Delta Drilling Company, under contract with Humble Oil Company, was engaged in drilling of an oil well at a point in the Gulf of Mexico approximately 10½ miles off the shore of Louisiana. The well was being drilled from a fixed or stationary platform permanently attached on pilings to the bottom of the Gulf, to which was moored the HUMBLE ST-6 for use as a tender in support of the drilling operations. The drilling crew slept and ate on the ST-6, and equipment, such as pipe, machinery, drilling mud and cement, was stored on the tender. Plaintiff, with several other members of the drilling crew, was mixing drilling cement on the deck of the ST-6 from whence it was to be pumped by connecting hose to the 'well being drilled from the stationary platform. Plaintiff's duties consisted of carrying bags of cement from a storage bin to a hopper where they were dumped into the mixing apparatus. In some manner not too clearly explained, while carrying one of these heavy bags in his arms, plaintiff slipped and felt a "sensation" in his back. He continued to work but at the end of the day the pain grew worse and eventually it was necessary that he leave the drilling operations and return to his home ashore. He was treated by his personal physician, returned to work for a short period but found the pain so great he was compelled to discontinue work altogether. He sought further medical attention and an operation was performed for a ruptured disc. He contends that he is permanently disabled as a result of the accident which he alleges was due to the fault of respondent in not maintaining a safe place for him to work.

Alternatively, he seeks recovery under the Louisiana Workmen's Compensation Act for 400 weeks of compensation which is the amount provided under the State Act for permanent, total disability.

We first discuss the question of his alleged status as a seaman. The HUMBLE ST-6 was being used as the living quarters for the drilling crew and for the storage of supplies and materials needed in the drilling of the well. However, the vessel was owned by Humble and under the control and direction of a crew and superintendent employed by Humble, which is not sued here. Plaintiff was normally assigned to drilling operations on the fixed platform. He lived and ate on the tender and on irregular occasions, once or twice a month, engaged in mixing drilling mud and cement on the deck of the tender. He was not otherwise identified with the tender.

Generally, every person who is employed or engaged to serve in any capacity on board a vessel is deemed to be a seaman. 46 U.S.C.A. § 712. A seaman is also defined as a person having connection with a vessel and playing some part in connection with the labor about the operation and welfare of the vessel while in navigable waters. Gahagan Const. Corporation v. Armao, 1 Cir., 1948, 165 F.2d 301. A vessel need not necessarily be a means of transportation on water. It can also be a special purpose craft. Offshore Company v. Robison, 5 Cir., 1959, 266 F.2d 769, 75 A.L.R.2d 1296. We believe the ST-6 was a vessel. Whether plaintiff here is a seaman and entitled to Jones Act relief is a question of fact which must be determined by the court, which is the trier of the facts. Norris, The Law of Seamen (2d Ed.), § 660.

We do not believe the facts show that plaintiff was a seaman within the contemplation of the Jones Act or the decisions handed down under the Act applicable to workers of this kind. Each case must be determined on its own separate facts. Gianfala v. Texas Co., 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955); Texas Company v. Savoie, 5

Cir., 1957, 240 F.2d 674; Offshore Company v. Robison, supra; Adams v. Kelly Drilling Co., 5 Cir., 1960, 273 F.2d 887; and Stanley v. Guy Scroggins Construction Company, 5 Cir., 1961, 297 F.2d 374. Respondent was not the owner, operator or owner pro hac vice of the HUMBLE ST–6. The evidence shows that it was owned by Humble which was at all times completely in control of its own vessel. Though plaintiff used the ST–6 for his living quarters and meals and was engaged at the time of his injury in mixing cement on the deck of the vessel, his usual normal duties and to which he was more or less permanently assigned were on the fixed drilling platform as a roughneck.

Even if we conceded arguendo that his status was that of a seaman, there is no negligence proved against respondent nor can it be held responsible for alleged unseaworthiness of the ST–6 which it did not control or operate. The obligation of seaworthiness is peculiarly and exclusively that of the owner or operator. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). No unseaworthiness is indicated by the testimony. Plaintiff had been working in the area for some time without incident. The evidence is vague and hazy as to the manner in which plaintiff was injured. He is apparently not sure what caused his injury. It is true that there was some cement on the deck which had been scattered in the mixing operation, but it is not shown to our satisfaction that the area was unsafe. The best we can determine from all of the evidence is that plaintiff strained his back in lifting the heavy bags of drilling cement and that the ruptured disc resulted from the laborious work he was doing rather than from any negligence on the part of respondent or from any unseaworthiness of the vessel.

Plaintiff was, however, engaged in the performance of a hazardous occupation and alternatively claims relief under the Louisiana Workmen's Compensation Act. We must determine now whether the provisions of the Outer Continental Shelf Lands Act (43 U.S.C.A. §§ 1331–1343), as interpreted in Pure Oil Company v. Snipes, 5 Cir., 1961, 293 F.2d 60, restrict plaintiff's remedy to the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. § 901 et seq.).

Section 1333(c) of the Outer Continental Shelf Lands Act provides that compensation shall be payable under the provisions of the Longshoremen's Act with respect to disability of an employee resulting from any injury occurring as a result of developing the natural resources of the subsoil and sea bed of the outer continental shelf. The question is whether this remedy is exclusive. If not, we must revert to applicability of the so-called Twilight Zone doctrine first announced by the Supreme Court in Davis v. Department of Labor and Industries, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 (1942). Under the Twilight Zone concept plaintiff would have an election to choose, as he has here, a remedy under the Louisiana Workmen's Compensation Act rather than under the Longshoremen's Act.[1]

However, in Pure Oil Company v. Snipes, supra, the Fifth Circuit held that it was the intention of Congress under the Outer Continental Shelf Lands Act that federal, not state, law is applicable to persons injured in the area defined by the Act. This being true, plaintiff's sole remedy under our findings is under the Longshoremen's and Harbor Workers' Compensation Act and he may not claim under the Louisiana Workmen's Compensation Act.

Judgment will be entered accordingly, dismissing plaintiff's suit.

[1]. The recent decision of the Supreme Court in Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), can be interpreted as abolishing the Twilight Zone. See "Calbeck v. Travelers Insurance Company: The Twilight's Last Gleaming?" 37 Tulane Law Rev. 79.