**Vana B. SIRMONS**

v.

**BAXTER DRILLING, INC. and Insurance Company of North America.**

No. 10345.

United States District Court
W. D. Louisiana,
Lake Charles Division.

March 17, 1965.

Francis E. Mire, Lake Charles, La., for plaintiff.

Jones, Kimball, Harper, Tete & Wetherill, Lake Charles, La., for defendant.

HUNTER, District Judge:

Plaintiff has sued under the Jones Act, 46 U.S.C. § 688, alleging that he was injured on May 12, 1964 while working as a member of a crew of a vessel owned and operated by defendant, Baxter Drilling, Inc.

The case came on for trial on December 21, 1964, on the single issue of whether the plaintiff was a seaman and member of a crew of a vessel within the meaning and purview of the Jones Act. The Court finds the following facts to be relevant:

FINDINGS OF FACT

(1) On May 12, 1964, and for sometime prior thereto, plaintiff was an employee of Baxter Drilling, Inc., in the business of drilling for and production of oil. Plaintiff was hired in the capacity of "Derrickman" and was assigned during the entire course of his employment with Baxter Drilling, Inc., to a drilling rig designated as "Baxter Rig No. 3."

(2) Baxter Rig No. 3 was manufactured and equipped by J. Ray McDermott and Co., Inc., at Bayou Boeuf, Louisiana and delivered to the job site on a derrick barge on

July 27, 1963. Baxter Drilling, Inc., accepted delivery of the rig the following day, July 28, 1963.

(3) Baxter Rig No. 3 was designed and manufactured in eight major pieces of machinery, each of which were put into place from the derrick barge onto a permanent platform situated in the Gulf of Mexico. After these components were put in place, they were assembled into a complete drilling rig.

(4) The platform on which Baxter Rig No. 3 has been since its delivery by the manufacturer is located on the Outer Continental Shelf in Block 208, Ship Shoal Area, in the Gulf of Mexico.

(5) The platform is installed on eight pile which were driven to refusal in the floor of the Gulf in approximately 103 feet of water. The platform is not susceptible of being moved from place to place after its initial installation. In fact, the only way the platform can be moved would be to sever the eight pile below the water level with dynamite charges and then refabricate the legs of the platform at an expense greater than the salvage value of the platform.

(6) Baxter Rig No. 3 contains living quarters for three drilling crews. Each crew works an eight hour shift, resulting in an around-the-clock operation. Each employee of Baxter Drilling, Inc., including plaintiff, lives on the rig for seven days and is off seven days and is transported to and from the rig in a crewboat or helicopter.

(7) The plaintiff, as well as the other members of the Baxter drilling crews, had nothing to do with the operations of the derrick barge which delivered and installed the drilling rig. The drilling crews were only employed after Baxter Drilling, Inc. had accepted delivery of the rig in place on the platform.

(8) Once every seven days, the plaintiff and his fellow crew members were transported to or from the rig, usually by crewboat, sometimes by helicopter. On the crewboat plaintiff had no duties; he was merely a passenger and was paid $1.00 per hour "travel time".

(9) Plaintiff's principal duties in his employment for defendant were confined to the normal operation of the drilling rig which duties would have been the same had the rig been entirely landlocked.

(10) Baxter Rig No. 3 was mounted on tracks and could be moved short distances on the platform with the use of hydraulic jacks. The purpose of this mobility was to allow the drilling of several wells from the same platform.

## CONCLUSIONS

Baxter Rig No. 3 is, in essence, nothing more than eight "packages" of machinery which, when assembled, form a functioning drilling unit. The rig as such, is not susceptible of navigation under its own or other power. The platform on which the rig has been installed is likewise neither designed nor constructed as a vessel or special purpose craft. It cannot be moved from its position by any means short of dynamite charges which would destroy the usefulness of the platform.

The issues of this case were first presented to the Fifth Circuit Court of Appeals in the case of Texas Co. v. Savoie, 240 F.2d 674 (5th Cir. 1957). In Savoie, the decedent worked on fixed platforms in a navigable lake and was transported from platform to platform aboard a lugger. It was contended that he was a seaman and member of the crew of the lugger and the jury so held. The Court of Appeals reversed and set aside the verdict.

Subsequently, the now famous case of Offshore Co. v. Robison, 266 F.2d 769, 75 A.L.R.2d 1296 (5th Cir. 1959), was decided. The Robison case involved a "special purpose craft," a barge which could

be towed from location to location and submersed while the drilling operations were performed. The Fifth Circuit affirmed a jury verdict for the plaintiff on the basis that:

"(T)here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a *vessel* (including special purpose structures not usually employed as a means of transport on water *but designed to float on water* * * *)." Offshore Co. v. Robison, 266 F.2d 769, 779, 75 A.L.R.2d 1296 (5th Cir. 1959) (Emphasis added).

Significantly, the Court in Robison distinguished its own decision in Savoie on the following grounds:

"The Savoie case is not this case. * * * His duties related entirely to work on permanently fixed well platforms." Id. at 779.

The Robison decision has subsequently been defined and explained by the Court of its origin as merely establishing the criteria for deciding whether there is a sufficient evidentiary basis to substantiate a person's claim as a seaman. Not every case involving offshore drilling operations presents this issue. Rotolo v. Halliburton Co., 317 F.2d 9 (5th Cir. 1963), Thibodeaux v. J. Ray McDermott & Co., 276 F.2d 42 (5th Cir. 1960). Consistently, the most important criterion is whether the person seeking seaman's status was assigned more or less permanently to a craft "designed to float on water." No such craft exists in the case at bar.

The distinction between fixed drilling platforms and special purpose vessels has been followed in published decisions in the Eastern District of Louisiana. In Ross v. Delta Drilling Co., 213 F.Supp. 270 (E.D.La.1962), Judge Ainsworth held, without a jury, that the claimant was not a seaman even though he was quartered on a vessel and was mixing drilling mud on the deck of the vessel when he was injured because "his usual normal duties and to which he was more

or less permanently assigned were on the fixed drilling platform as a roughneck." On the other hand, in Guilbeau v. Falcon Seaboard Drilling Co., 215 F.Supp. 909 (E.D.La.1963), Judge Ainsworth held, without a jury, that the claimant was entitled to Jones Act relief because he was more or less permanently assigned to a submersible oil drilling rig and the rig was a special purpose craft and a vessel.

Considering the foregoing jurisprudence, the Court finds that the plaintiff in this case, Vana B. Sirmons, was assigned to a fixed, immovable platform and is not entitled to relief under the Jones Act as a seaman or member of a crew of a vessel. Accordingly, judgment will be granted for the defendants dismissing plaintiff's suit with costs.