**Riley J. JOHNSON**

v.

**NOBLE DRILLING COMPANY and Aetna Casualty & Surety Company.**

**Civ. A. No. 11290.**

United States District Court
W. D. Louisiana,
Opelousas Division.

Sept. 6, 1966.

Dubuisson & Dubuisson, W. A. Brinkhaus, Opelousas, La., for plaintiff.

Voorhies, Labbe, Fontenot, Leonard & McGlasson, H. Lee Leonard, Lafayette, La., for defendants.

PUTNAM, District Judge.

■ This is a suit brought by Riley J. Johnson against Noble Drilling Company, his former employer, and its insurer under the Jones Act, 46 U.S.C.A. § 688, and the general maritime law, for damages for injuries received by him while working on a stationary platform located in the Gulf of Mexico on or about November 28, 1964. Petitioner was attempting to punch holes in a can of caustic soda used to treat the drilling mud employed in the drilling operation, and as a result of striking the can with a chipping hammer some of the contents splashed into his eye, causing a severe burn. He has fully recovered.

As usually occurs in cases of this nature, one of the principal issues is whether or not claimant enjoys the status of a seaman or member of the crew of a vessel in order to invoke these remedies. This is a question of fact which can only be determined after consideration of all of the circumstances of claimant's employment in each particular case. Offshore Co. v. Robison, 5 Cir. 1959, 266 F.2d 769, 75 A.L.R.2d 1296; Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir. 1960, 280 F.2d 523; Stanley v. Guy Scroggins Construction Co., 5 Cir. 1961, 297 F.2d 374; Tipton v. Socony Mobil Oil Co., 315 F.2d 660, 5 Cir. 1963, rev'd on other ground, 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4; Rotolo v. Halliburton Co., 5 Cir. 1963, 317 F.2d 9; Noble Drilling Corp. v. Saunier, 5 Cir. 1964, 335 F.2d 62; Producers Drilling Co. v. Gray, 5 Cir. 1966, 361 F.2d 432.

The evidence shows that Noble contracted with the California Company to drill an oil well on a fixed platform located in the Gulf of Mexico off the coast of Louisiana, designated as ST-11. The contract itself is not in evidence, but we conclude from the testimony of all of the witnesses that California Company agreed to furnish the S-25 as a tender to be used in support of the drilling rig located on the platform. This vessel was moored or anchored alongside the platform and performed several special functions in aid and support of the drilling of the well, these being: (1) providing sleeping quarters and meals to the employees of Noble Drilling Company who were engaged in the operation of the drilling rig, and to furnish office space for the tool pusher and the engineer who supervised the drilling of the well; (2) it carried bulk mud in hoppers located below decks, chemicals and other supplies used by Noble's crew in the drilling operation, hence it functioned as a supply ship or barge; and (3) it was equipped with a mud pump and connecting lines through which bulk mud was pumped to the mud tanks located on the platform, where it was treated with other chemicals, such as the caustic soda in this case, and then circulated through the well. The mud pumps and connecting lines through which the mud supply reached the platform were part of the gear and equipment of the S-25 and were permanently affixed thereto.

■ In view of these findings, it is clear that this tender was a special-purpose vessel and that those primarily aboard for the purpose of operating the vessel and its equipment to enable it to accomplish its mission or serve the purpose for which it was intended are properly classed as members of the crew of such vessel. Offshore Co. v. Robison, supra, and other authorities cited above.

■ The platform ST-11 was permanently affixed to the ocean floor. It was immovable and incapable of being floated or otherwise used or moved upon the surface of the Gulf. Such platforms cannot in any sense of the word be considered as vessels in navigation within the meaning of the Jones Act or the general maritime law. Ross v. Delta Drilling Co., E.D.La. 1962, 213 F.Supp. 270, Sirmons v. Baxter Drilling Inc., W.D.La. 1965, 239 F.Supp. 348; Dixon v. Oosting, E.D.Va. 1965, 238 F.Supp. 25; Hill v. Diamond, E.D.Va. 1962, 203 F.Supp. 877, aff'd 4 Cir., 311 F.2d 789.

The tender was manned by a captain and a crew referred to as deckhands who served the navigational functions of the ship and saw to its maintenance, roustabouts also employed by the California Company who did maintenance work such as chipping and painting, keeping the decks and holes clean, and taking on supplies for use by the rig on the platform as they came alongside in supply boats, and who were also required to unload drill collars, pipe, casing, chemicals and various drilling supplies from the tender to the platform when required by Noble for the continuation of the drilling operation, and a galley crew who prepared meals and took care of the living area aboard the vessel.

On the other hand, Noble's employees were there primarily to operate the drilling rig located upon the fixed structure. They did not perform any substantial duties aboard the S-25 in aid of the special functions of that vessel, but the derrick man was required from time to time to go to the pump room and operate the mud pumps when additional bulk mud had to be sent to the mud tanks on the platform. On these occasions the derrick man would operate the vessel's pumps until the mud in the tanks on the platform reached the desired weight. While occasionally one of the mud men might be called upon to assist the derrick man in mixing mud aboard the tender, they were usually and customarily employed in the mud room and at the hoppers and tanks located on the platform.

Plaintiff Johnson was working as a mud man when he sustained the injuries of which he complains. He had no regular duties aboard the tender S-25, his work being primarily as a member of the

crew operating the drilling rig. As a mud man in addition to mixing caustic soda and other chemicals into the mud tanks, he was required on frequent occasions to take samples of the drilling fluid from the platform aboard the tender for the engineer whose office was located on the ship. When he first came aboard, the barge man told him how to operate the valve system for supplying mud to the platform, but these instructions were given to all new hands in the event of an emergency, such as a blowout or threatened blowout of the well being drilled. He was never called upon to work as the pump operator aboard the tender.

■ Under these facts we resolve the question of status against the petitioner. In this situation it was necessary for the supplies needed to drill the oil well to be kept conveniently at hand to the rig. Instead of keeping these supplies on the fixed platform, California Company maintained the tender S–25. It was not the mission of the vessel to drill a well, it was completely incapable of doing so. Its function was, as we have seen, to furnish certain specified services to those workmen who would operate the rig and who would primarily be employed by Noble on the drilling platform itself. While these workmen were required to sleep and eat aboard the tender, they did so as *recipients* of the vessel's services and, in the opinion of this court, occupied the status of passengers in relation to this ship.

In Creel v. Drill Tender Jack Cleverly et al., No. 9924, Western District of Louisiana, 264 F.Supp. 98, this Court found that a member of the drilling crew in that case under circumstances vastly different from those found to exist here was a *member of the crew of a vessel* within the coverage of the Jones Act. In Ross v. Delta Drilling Co., E.D.La. 1962, 213 F.Supp. 270, Judge Ainsworth, under circumstances similar to those which we find to exist here, held that the injured employee was not a member of the crew of such a vessel. We conclude as a matter of fact that the work plaintiff did or might have been called upon to do aboard the S–25 in the course of his employment by Noble, was not sufficient to confer upon him the status of seaman, or "member of the crew" of that vessel.

Noble was not the owner or operator of the tender. Plaintiff has not sued the California Company. Even if he had sued this defendant, there is no showing of any negligence or unseaworthiness which would render that company liable under the doctrine of Pure Oil Co. v. Snipes, 5 Cir. 1961, 293 F.2d 60, or Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

In view of the foregoing conclusion there is no necessity for the Court to discuss quantum. Plaintiff's only remedy is against his employer under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. Ross v. Delta Drilling Co., supra.

Counsel for the defendants will prepare and submit an appropriate decree for signature pursuant to Rule 9(e) of the Western District of Louisiana.