liWALTZER, Judge.
We are called upon to decide whether the trial court was correct in denying summary judgment. Respondent has asserted that the writ application should not be considered and should be dismissed because of various procedural errors.[1] We find no merit in this contention, since the rule permits an extension by the trial court where the motion is filed before the expiration of the original return date or an extension. Assuming ar-guendo the extension was intended to run for 15 days from 22 September 1996, the earliest of the alternatives, the application was due in this court no later than 7 October 1996, the date it was, in fact, filed in our court. Considering that the notice of intent and the motion to extend the due date were filed within 30 days of the ruling as permitted by Rule 4.3 of the Uniform Rules, the extension was granted, and the application was filed within 15 days of what would have been the original due date. Accordingly, the motion to dismiss the application is DENIED.

BACKGROUND FACTS

Plaintiff was allegedly injured while working in New Orleans on 13 October 1993. At the time of the injury, he was employed by Diversified Industries Contractors, but was performing all of l2his work as a welder at the American Marine shipyard. He filled out his initial application for employment at the American Marine site and had worked there continuously for approximately four months when he was injured. He punched a time clock at the facility and received his daily assignments from American Marine’s foreman. He was supervised by an American Marine employee. Plaintiff was paid on an hourly basis for the hours he worked at American Marine, but received his pay check from Diversified. Likewise, plaintiff re *552 ceived worker’s compensation benefits through Diversified’s compensation insurer.
Plaintiff was injured at the work site while cleaning his work area when he was struck in the chest by the hoist block on a mobile track crane. Plaintiff filed suit against relator, American Marine Corporation, alleging an intentional tort. Defendant filed a motion for summary judgment claiming that the plaintiff was a borrowed employee, asserting that plaintiff was limited to worker’s compensation and that American Marine was immune from tort liability. The trial court denied defendant’s motion.

ANALYSIS

Generally, a motion for summary judgment is favored and should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup’rs of Louisiana State University, 591 So.2d 342, 345 (La.1991).
13The issue of borrowed servant status is a question of law for the court to determine. Fanguy ¶. Dupre Bros. Const. Co.,Inc., 588 So.2d 1251 (La.App. 1st Cir. 1991), writ denied, 594 So.2d 892 (La.1992). If the plaintiff is found to be the borrowed employee of the defendant, he is covered by the Longshoremen and Harbor Workers’ Compensation Act, 33 U.S.C. Sec. 905 et seq. and is entitled to an exclusive remedy in worker’s compensation. Melancon v. Amoco Production Co., 834 F.2d 1238, 1243 (5th Cir.1988).
In determining borrowed servant status, we consider the following factors:
1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?
2) Whose work is being performed?
3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
4) Did the employee acquiesce in the new work situation?
5) Did the original employer terminate his relationship with the employee?
6) Who furnished the tools and place for performance?
7) Was the new employment over a considerable length of time?
8) Who had the right to discharge the employee?
9) Who had the obligation to pay the employee?
Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969) and restated by the court in Ledet v. Quality Shipyards,Inc., 615 So.2d 990 (La.App. 1 Cir.1993) and by this court in Hall v. Equitable Shipyard, Inc., 95-1754 (La.App. 4 Cir. 2/29/96), 670 So.2d 543.
1. WHO HAD CONTROL?
Although no single factor or combination is determinative, the “control” factor has been central in determining borrowed servant status. An employee is considered borrowed for worker’s compensation purposes when his general employer gives- up control Uto the borrowing employer. Freeman v. Brown’s Furniture of Bunkie, Inc., 527 So.2d 544 (La.App. 3d Cir.1988).
American Marine had control over the plaintiffs work the entire four months of his employment. Plaintiff admitted in his deposition that he was supervised only by American Marine employees.
2. WHOSE WORK WAS PERFORMED?
American Marine’s business was shipbuilding, ship repair, and building casino vessels. Plaintiff worked as a welder on the casino that American Marine had a contract to build. Furthermore, plaintiff worked only at American Marine.
*553 3.AGREEMENT BETWEEN EMPLOYERS
Relator asserts that because plaintiff was hired at the American Marine yard and worked there exclusively, “it is clear that Diversified and American Marine had an agreement that Diversified would supply workers to American Marine’s benefit”. Although we learn from the record that Diversified sent several workers to American Marine for ship building purposes, there is no formal agreement of record. However, the plaintiff’s deposition points to an agreement between the original employer and American Marine.
In Melancon, 834 F.2d at 1245, the court held that, despite a contract clause to the contrary, where the reality at the work site and the parties’ actions indicated that the machine shop understood that its employee would be taking his instructions from the oil production company, the contractual clause could not waive the plaintiffs legal status as the oil company’s borrowed employee. Even where there was a contract between the original employer and the “borrowing” employer which purported to defeat the borrowed employee relationship, the other factors controlled.
4. EMPLOYEE ACQUIESCENCE
IsThere is nothing of record tending to show that the plaintiff did not acquiesce in the arrangement by which he worked as a welder for American Marine.
5. TERMINATION OF ORIGINAL EMPLOYMENT RELATIONSHIP
The focus of this factor is on the lending employer’s relationship with the employee. Diversified never supervised any of plaintiffs work. Plaintiffs only contact with Diversified occurred when someone from Diversified delivered the paychecks to the American Marine shipyard. Finally, the plaintiff punched the time clock at American Marine. Similar facts were held sufficient in Ledet to support a finding that the original employer had terminated its relationship with the employee.
6. PROVISION OF TOOLS AND PLACE OF PERFORMANCE
Plaintiff worked exclusively at the American Marine shipyard, so that American Marine furnished the place of performance. The record indicates that plaintiff supplied his own tools and none were furnished by Diversified.
7. EMPLOYMENT OVER A CONSIDERABLE LENGTH OF TIME
One day of employment has been held to be sufficient to support a finding of borrowed employee status. Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d 615 (5th Cir.1986). This court has held that six months is a considerable period of time for purposes of establishing borrowed employee status. Hall, supra. The plaintiff worked at the American Marine shipyard for approximately four months before the accident.
8. RIGHT TO DISCHARGE EMPLOYEE
Clearly, American Marine had the right to discharge the plaintiff. Plaintiff testified under oath in his deposition that he believed American Marine could run him off the job site if his work was unsatisfactory. Although now plaintiff states in opposition to defendant’s motion for summary judgment, that he really did not know whether American Marine had this authority, | (-¡plaintiffs sworn answers at his earlier deposition were obviously candid and not self-serving.
9. OBLIGATION TO PAY EMPLOYEE
Although the plaintiff was paid by Diversified, payment was made according to the hours submitted by American Marine. On this issue, the case is similar to Hall, Ledet and Melancon, supra. In both of these cases, the court found that the plaintiff was a borrowed employee.
Plaintiff asserts that since Diversified’s insurer, not American Marine’s, paid compensation benefits after his injury, American Marine is not immune from tort liability. However, there is no requirement that tort immunity under the amendment to the Long *554 shoremen and Harbor Workers’ Compensation Act attaches only to that employer who actually pays his employees’ workers compensation, through payment of premiums for the worker’s compensation insurance coverage. Melancon, supra; Longshoremen and Harbor Workers’ Compensation Act, Sec. 5(a), 33 U.S.C. Sec. 905(a).

CONCLUSION

Applying the factors of the Ruiz test to this case, relator has shown that there is no genuine issue of material fact and that plaintiff is its borrowed employee, with an exclusive compensation remedy under the Longshoremen and Harbor Workers’ Compensation Act.
ACCORDINGLY, the WRIT APPLICATION is GRANTED, the judgment of the trial court is REVERSED, and relator’s motion for summary judgment is GRANTED.

WRIT GRANTED. JUDGMENT REVERSED. MOTION FOR SUMMARY JUDGMENT GRANTED.

. The application was filed 4 October 1996 with no notice of intent and order and no extension from the trial court. On 7 October 1996 the relator supplemented the application with a copy of the notice of intent and ex-parte motion to extend return date filed in the trial court, which indicate 20 September 1996 as the date on the certificate of service. The date stamps from the court are illegible, except for the stamp on the order granting the extension, which stamp reads that it was filed on 23 September 1996. There is no order setting an original return date. Rather, the motion to extend the return date recites the rule that the trial court shall set a return date within 30 days of the contested ruling and that the trial court has the discretion to allow extensions of that return date. Relator notes that Monday, 23 September 1996 is the last date the court could initially fix for a return and requests a 15 day extension. The trial court granted the motion and extended the return date 15 days, though it is not clear when the 15 day extension began. Relator asserts that the extension ran from 22 September 1996 (30 days from the ruling). Alternatively, because 22 September 1996 fell on a Sunday, one could find that the extension ran from 23 September 1996, which would have been the latest possible original return date, had it been requested by the relator, and which was the date of filing the motion for extension. It could also be argued that the extension began to run from 24 September 1996, the date the extension order was signed.