**RIDER, et al.**

v.

**POOL OFFSHORE COMPANY, et al.**

**Civil Action No. 96–3716.**

United States District Court,
E.D. Louisiana.

Oct. 1, 1997.

Dennis Stewart Mann, Michelle D. Robert, Howard, Laudumiey, et al., New Orleans, LA, for Sandra Rider, Danny R. Rider, Donna Billiot, Gregory J. Billiot.

Kent B. Payne, Kent B. Payne, Attorney at Law, Baton Rouge, LA, for Louisiana Workers' Compensation Corp.

Edward Settoon Johnson, Cindy Teresa Matherne, Johnson, Johnson, Barrios & Yacoubian, New Orleans, LA, for Pool Co.

George Davidson Fagan, Leake & Andersson L.L.P., New Orleans, LA, for M & L Industries, Inc.

Michael L. McAlpine, Richard Abelard Cozad, Gregory Lawrence Ernst, McAlpine, Peuler & Cozad, New Orleans, La, Robert Joseph Killeen, Jr., Killeen & Fierro, PLC, Houston, TX, for L'Homme, Inc.

PORTEOUS, District Judge.

Before this court are the motions of defendant, Pool Company, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. These motions came for hearing on an earlier date and oral argument was waived. Having reviewed the motion and memoranda, exhibits and applicable law, this court sits ready to rule.

## I. *BACKGROUND*

On April 22, 1995, plaintiffs, Danny Rider ("Rider") and Gregory Billiot ("Billiot"), were working at Pool Company's ("Pool") facility in Harvey, Louisiana. Plaintiffs were allegedly assisting Pool personnel in the construction of a platform drilling rig. At the end of the workday, plaintiffs stepped into a basket attached to a forklift so that they could be lowered to the ground. As the forklift lowered the plaintiffs, an alleged malfunction caused the basket to fall to the ground. Plaintiffs allege they suffered injuries as a result of the fall. Plaintiffs then filed this suit against Pool.

Pool filed two separate Motions for Summary Judgment, claiming that it was plaintiffs' statutory employer or, alternatively, that plaintiffs are borrowed servants. In either case, Pool maintains that it is immune from tort liability under Louisiana's Workers' Compensation laws.

## II. *LEGAL ANALYSIS*

### A. *Law on Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco,* 76 F.3d 651 (5th Cir.1996), (citing *Skotak v. Tenneco Resins. Inc.,* 953 F.2d 909, 912–13 (5th Cir.)) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). When the moving party has carried

its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Industrial Co.*, 475 U.S. at 588, 106 S.Ct. at 1356, 89 L.Ed.2d 538 (1986). Finally, the court notes that the substantive law determines materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## B. *The Borrowed Servant Doctrine*

Under Louisiana Worker' Compensation Act, an employee injured in an accident while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer. La.R.S. 23:1032(A)(1). Neither party to this action disputes that plaintiffs were injured while in the course and scope of their employment. Rather, parties dispute the status of plaintiffs as borrowed servants.

Whether a person is a borrowed servant constitutes an issue of law for the district court to decide. *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238 (5th Cir.1988); *Fanguy v. Dupre Bros. Const. Co.*, 588 So.2d 1251 (La.App. 1 Cir.1991); *Dustin v. DHCI Home Health Services, Inc.*, 95–1989 (La. App. 1 Cir.5/10/96), 673 So.2d 356. In Louisiana, there is a presumption that the general employer retains control of his employee. *Benoit v. Hunt Tool Co.*, 219 La. 380, 53 So.2d 137 (1951). However, the Fifth Circuit and several recent Louisiana circuit cases outline ten factors to be evaluated in determining whether the borrowed servant doctrine applies. These factors are:

(1) Right of control;

(2) Selection of employees;

(3) Payment of wages;

(4) Power of Dismissal;

(5) Relinquishment of control by general employer;

(6) Which employer's work was being performed at the time in question;

(7) Agreement, either implicit or explicit between the borrowing and lending employer;

(8) Furnishing of instructions and place for performance of the work in question;

(9) Length of employment; and

(10) Acquiescence by the employee in the new work situation.

*Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir.1969); *Walters v. Metropolitan Erection Co.*, 94–0162 (La.App.4 Cir. 10/27/94); 644 So.2d 1143; *writs denied*, 94–2858 and 94–2870 (La. 2/9/95); 649 So.2d 420; *Garvin v. Perret*, 95–217 (La.App.5 Cir. 2/14/96); 670 So.2d 1250; *writ denied,* 96–0674 (La. 5/10/96); 672 So.2d 92; *Dustin v. DHCI Home Health Services, Inc.*, 95–1989 (La. App. 1 Cir. 5/10/96); 673 So.2d 356. These factors are to be weighed as appropriate in each particular case; no one of these factors, or any combination of them, is decisive, and no fixed test is used to determine the existence of a borrowed servant relationship. *Id.* Though the borrowed employee status is a question of law, the ten-factor test used to determine that question, is fact-driven.

Pool submits the following facts are not in dispute concerning the issue of whether plaintiffs are borrowed servants:

1. The plaintiffs were payroll employees of L'Homme.

2. L'Homme provided labor services to Pool on an as needed basis.

3. L'Homme provided plaintiffs to Pool to supplement Pool's existing welding/fitting work force.

4. Plaintiffs were working at Pool's facility and engaged in Pool's work at the time of the alleged accident.

5. Plaintiffs were under the direct instruction and supervision of Pool supervisory personnel.

6. Pool provided plaintiffs with all necessary equipment and tools.

7. Pool supervisors had the authority to dismiss plaintiffs from the job site.

8. No representative of L'Homme supervised or directed plaintiffs' work at the Pool job site.

9. Plaintiffs reported to Pool's facility to punch a Pool time card.

10. The L'Homme payroll was billed to Pool based on the time cards maintained by plaintiffs at Pool's facility.

Plaintiffs maintain the following material facts are in dispute, thus precluding the entry of summary judgment on whether the plaintiffs are borrowed servants:

1. Whether L'Homme and its employees were independent contractors.

2. Whether or not the plaintiffs were "borrowed servants."

3. Whether or not plaintiffs would have continued to work for L'Homme at the Pool yard had this accident not occurred.

4. Whether the equipment Pool claims they provided was actually provided by L'Homme.

5. Whether L'Homme's cost to provide insurance on its workers was included in the contract with Pool.

### 1. *Right of Control*

■ Pool contends that while working at Pool's facility, plaintiffs received their daily assignment, direction, instruction and supervision from Pool's supervisor, Tommy Aymond. *See* Deposition of Rider, p. 27–31; Deposition of Gregory Billiot, p. 27–30. Specifically, Pool claims the deposition testimony of the plaintiffs establishes they reported to Pool's facility at the beginning of each workday and plaintiffs would receive orders and instructions from a Pool supervisor who would assign that task to be completed for the day. *Id.* Moreover, Pool maintains that George Disher, a representative from L'Homme only occasionally stopped by Pool for the sole purpose of ensuring that Pool was satisfied with the contract work being provided. *Id.* Furthermore, defendant argues plaintiffs reported to Pool directly each morning where they punched a Pool time card from which they received their wages. *Id.*

Plaintiffs do not contest that Pool had supervisory control over them while at Pool's facility. *See* Plaintiff's Memorandum in Opposition, p. 4. Rather, plaintiffs contend L'Homme retained ultimate control. However, plaintiffs do not point to any fact contained in the record to support this argument.

### 2. *Selection of Employees*

Plaintiffs contend Pool did not solicit the employees. Instead, plaintiffs maintain L'Homme chose who would work at the Pool facility. However, plaintiffs offer no evidence to support their allegations.

### 3. *Payment of Wages*

Although Pool concedes plaintiffs received their paychecks from L'Homme, Pool maintains the wages and other expenses were billed to Pool by L'Homme. *See* Defendant Exhibit "A," p. 3–4. Defendant submits that at the end of each work week, a Pool supervisor would inspect the time cards to ensure the accuracy of each, and based on these time cards a written summary of hours was submitted to L'Homme for the Pool contract workers to receive their wages. *See* Deposition of Danny Rider, p. 50.

### 4. *Power of Dismissal*

Pool argues that deposition testimony reveals that at any time the Pool supervisor was displeased or dissatisfied with the contract work at the Pool facility, Pool supervisors had the authority to terminate the plaintiffs' relationship with Pool and to dismiss the L'Homme workers from the job site. *See* Deposition of Danny Rider, p. 49–50.

Plaintiffs contend L'Homme retained the power to monitor their work and fire them if necessary. However, Plaintiffs point to no evidence supporting their contention.

### 5. *Relinquishment of control by L'Homme*

Defendant argues that L'Homme never supervised plaintiffs' work. *See* Deposition of Rider, p. 27–31; Deposition of Gregory Billiot, p. 27–30. Moreover, defendant submits that plaintiffs' only contact with L'Homme occurred when George Disher occasionally stopped by to ensure Pool was satisfied with the work supplied under the contract. *Id.* Additionally, there is evidence in the record that plaintiffs only worked for Pool once hired by L'Homme. *See* Deposition of Danny Rider, p. 27; Deposition of Gregory Billiot, p. 33. There is no evidence that plaintiff conducted any work at L'Homme. Evidence also shows that Pool made sure plaintiffs had their equipment everyday. See Deposition of Danny Rider. p. 32. Finally, there is evidence that plaintiffs reported to Pool each workday where they participated in a safety meeting conducted by a Pool supervisor. *See Id.* at p. 28–29.

Plaintiffs offer no specific evidence contesting the facts offered by defendants.

### 6. *Whose work was being performed*

The parties do not dispute that plaintiffs were doing Pool's work at the time of the alleged accident in question.

### 7. *Agreement between L'Homme and Pool*

The Master Service Contract between L'Homme and Pool states that L'Homme shall be an independent contractor. However, as defendant correctly argues the existence of such a provision in an agreement does not preclude the finding of a borrowed servant relationship. *Brown v. Union Oil Co. of California*, 984 F.2d 674 (5th Cir. 1993); 96–2175 (La.App. 4 Cir. 11/27/96), 684 So.2d 550.

### 8. *Place of performance*

The parties do not dispute the place of performance was at Pool's facility. However, plaintiff disputes that Pool provided all equipment to plaintiffs. Specifically, plaintiffs point to the master service contract wherein it provides that L'Homme agreed to provide equipment to Pool. However, defendant points to the deposition testimony of plaintiffs where they state that Pool provided the welding torch and any spare equipment should plaintiffs lose or forget to bring theirs. Further, plaintiffs said that other equipment used, such as gloves, leather sleeves, hard hat and glasses belonged to the plaintiffs personally. *See* Deposition of Danny Rider, p. 32–34; Deposition of Gregory Billiot, p. 32.

### 9. *Length of employment*

Plaintiffs contend they worked at the Pool yard for approximately four months. Nonetheless, deposition testimony establishes plaintiffs spent each of those working days at the Pool facility. *See* Deposition of Danny Rider, p. 27–28; Deposition of Gregory Billiot, p. 32–33.

### 10. *Acquiescence by employees*

There is nothing in the record evidencing plaintiffs did not acquiesce in the arrangement between L'Homme and Pool.

Applying the above factors to the present case, Pool has shown that there is no genuine issue of material fact and that plaintiffs are borrowed servants. Therefore, plaintiffs' exclusive remedy is under the Louisiana Workers' Compensation Law. Since this court finds that plaintiffs are borrowed servants, it is not necessary to address whether Pool is the statutory employer of plaintiffs.

Accordingly,

**IT IS ORDERED** that the motion of defendant Pool Company for summary judgment on the issue of borrowed servant, be, and the same is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the motion of defendant Pool Company for summary judgment on the issue of statutory employer, be, and the same is hereby **MOOT.**