FREDERICKA HOMBERG WICKER, Judge.
 

 12This civil suit raises the question of whether the appellant is the borrowed employee of another. Here, the appellant brought an action for damages pursuant to the Longshore and Harbor Worker’s Compensation Act (LHWCA) for injuries sustained while in the course and scope of his employment with International Marine. After that suit was settled, the appellant brought the present suit against Northrop Grumman — the employer at whose site he was assigned to work as a quality control inspector when the injury occurred. Northrop Grumman filed a motion for summary judgment, arguing that because the appellant was its borrowed employee, it was immune from tort liability. The trial court granted the motion for summary judgment and dismissed the suit. For the following reasons, we affirm.
 

 Facts and Procedural History
 

 Plaintiff/Appellant, Mr. Abdul Musa, answered an advertisement by International Marine, Inc., a subcontractor, who sought to fill various positions in |sthe Pawnville.,
 
 [1]
 
 Louisiana area. International Marine hired Mr. Musa to work as a quality control inspector at Northrop Grumman, Inc. f/k/a/ Avondale Industries, Inc. For seven months, Mr. Musa worked on the morning shift as a quality control inspector at Northrop Grumman’s shipyard onboard the vessel ARCO. His tools, other than a flashlight which he supplied himself, consisted of án ink pen, clipboard, and safety harness that were provided by Northrop Grumman. Once Mr. Musa completed his inspections, he produced a quality control form, in triplicate, and delivered it to the person responsible for correcting the violation, the ship supervisor, and his immediate supervisor, Mr. John Whittington— none of whom were International Marine employees.
 

 In September of 1999, Mr. Musa sustained injuries to his left shoulder, middle back, left hip, and left leg while conducting inspections onboard the vessel ARCO when his foot slipped on a ladder while entering a tank. As a result, he brought a claim for damages pursuant to the LHWCA against International Marine which settled for $95,000. Mr. Musa then filed the present lawsuit against Northrop Grumman seeking to recover in tort, arguing that Northrop Grumman’s negligence was a proximate cause of his injuries.
 

 Northrop Grumman filed a motion for summary judgment, arguing that Mr. Musa was its borrowed servant when the injury occurred, which legal theory, if proven, would limit its liability to the exclusivity provision under the LHWCA, which benefits had already been paid by International Marine. At the hearing on the motion, however, Mr. Musa argued that because discovery was incomplete, the trial court was precluded, pursuant to La. C.C.P. art. 966(C), from ruling on the motion. The court gave Mr. Musa three months to complete discovery and rescheduled the hearing accordingly.
 

 | ¿The motion was heard in February of 2010 wherein Northrop Grumman reurged arguments made at the first hearing and informed the court that Mr. Musa had
 
 *246
 
 made no attempt to complete discovery until two weeks prior to the rescheduled hearing date. After arguments, the trial court granted the motion. Mr. Musa appeals and challenges the correctness of the summary judgment.
 

 Assignments of Error
 

 Mr. Musa argues that because genuine issues of material fact exist regarding his status as a borrowed employee, the trial court erred by denying the motion for summary judgment. He also argues that the trial court abused its discretion in granting the motion for summary judgment because discovery was incomplete.
 

 Discussion
 

 Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate.
 
 Moody v. United Nat. Ins. Co.,
 
 98-287 (La.App. 5 Cir. 9/29/98), 743 So.2d 680, 682. (citations omitted). However, “the issue of whether a relationship of borrowed servant exist[s] is a matter of law.”
 
 Gaudet v. Exxon Corp.,
 
 562 F.2d 351, 357 (5 Cir.1977). It concerns not only the facts themselves but the implications to be drawn therefrom.
 
 Id.
 
 at 358. If a plaintiff is found to be the borrowed employee of the defendant, he is covered by the Longshoreman and Harbor Workers’ Compensation Act, 33 U.S.C. Sec. 905 et. seq. and is limited to an exclusive remedy in workers’ compensation.
 
 Conner v. Am. Marine Corp.,
 
 96-2175 (La.App. 4 Cir. 11/27/96), 684 So.2d 550, 552.
 

 First Assignment of Error
 
 — Borrowed
 
 Employee
 

 In his first assignment of error, Mr. Musa argues that genuine issues of material fact exist regarding his status as a borrowed employee.
 

 | ¡^Borrowed employee disputes arise when a defendant who is not a plaintiffs formal employer argues that the plaintiff is in fact acting as the defendant’s employee.
 
 West v. Kerr-McGee Corp.,
 
 765 F.2d 526, 529 (5 Cir.1985). To determine whether an employee is the borrowed employee of another, the court must “inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the (servant) in the performance of (his) work.”
 
 Gaudet, supra
 
 at 355.
 

 Various criteria have been considered in determining whether the borrowed servant doctrine is applicable. These criteria were set forth in
 
 Ruiz v. Shell Oil Co.,
 
 413 F.2d 310 (5 Cir.1969). While no one of these factors, standing alone, or any combination of them, is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship, the following tests have been given great weight: (1) Who has control over the employee and the work being performed? (2) Whose work is being performed? (3) Was there an agreement between the formal employer and the borrowing employer? (4) Did the employee acquiesce in the new work situation? (5) Did the original employer terminate his relationship with the employee? (6) Who furnished tools and place for employment? (7) Was the new employment over a considerable length of time? (8) Who has the right to discharge the employee? and (9) Who had the obligation to pay the employee?
 
 Id.
 
 at 312-13.
 

 Who had control?
 

 Control, the first
 
 Ruiz
 
 factor, is perhaps the most universally accepted standard for establishing an employer-employee relationship.
 
 Ruiz, supra
 
 at 312. To prove such a relationship existed, Northrop Grumman points to Mr. Musa’s deposition testimony wherein he stated that he was supervised only by Northrop
 
 *247
 
 Grumman’s employees. In fact, he received his daily assignments from his | ^immediate supervisor — a Northrop Grumman employee. He did not perform any work for International Marine; was never supervised by anyone from International Marine; and did not report his findings to International Marine.
 

 Mr. Musa argues, however, that Northrop Grumman did not exercise complete control over him because they lacked the authority to alter his findings once his inspections were complete.
 
 [2]
 
 Contrary to his own assertion, however, Mr. Musa further testified that if Mr. Whittington, his immediate supervisor, disagreed with his findings, he did, in fact, have the authority to evaluate his work to ensure that Mr. Musa had conducted inspections properly.
 

 In
 
 Conner, supra,
 
 the court found that the borrowing employer exercised control over the plaintiff. There, American Marine, the borrowing employer, controlled the plaintiff’s work for the duration of his four-month employment with the company. Moreover, the plaintiff testified that he was only supervised by American Marine. Here, Northrop Grumman controlled Mr. Musa’s work during his seven-month tenure there; and he likewise, was only supervised by Northrop Grumman. Similarly, in
 
 Capps v. N.L. Baroid-NL Indus.,
 
 784 F.2d 615, 617 (5 Cir.1986), the court found that the original employer did not instruct Capps regarding the work to be performed at Baroid — the borrowing employer. Likewise, in this case, International Marine did not instruct Mr. Musa on the work he was to perform at Northrop Grumman.
 

 These facts, taken together, reveal that Northrop Grumman exercised control over Mr. Musa, thereby favoring borrowed-employee status.
 

 |
 
 nWhose work was performed?
 

 The second
 
 Ruiz
 
 factor warrants minimal consideration. Mr. Musa was hired to conduct quality inspections for Northrop Grumman onboard an ARCO vessel. This factor also weighs in favor of borrowed-employee status.
 

 Was
 
 there an agreement?
 

 The third
 
 Ruiz
 
 factor considers whether an agreement existed between the original and borrowing employer. “Although a formal agreement between the two employers is not considered indispensable to the borrowed-servant relationship, the very terms ‘borrowed’ and ‘loaned’ connote some type of agreement, understanding, or meeting of the minds between the borrower and lender.”
 
 Ruiz, supra,
 
 at 313. Here, an agreement did, in fact, exist between Northrop Grumman and International Marine which stated, in pertinent part:
 
 [3]
 

 Vendor [International Marine] is an independent Contractor, free of control and supervision by Buyer [Northrop Grumman] as to the means or manner of performing all work or services hereunder ...
 
 Neither Vendor, or person or firm used by Vendor, shall be deemed
 
 
 *248
 

 for any purpose to be the employer, ayent, servant, or representative of the Buyer
 
 in performance of any work or services under this Order, (emphasis added).
 

 A similar contract provision between the original and borrowing employer was present in
 
 Brown v. Union Oil Co. of Cal.,
 
 984 F.2d 674 (5 Cir.1993). However, that court concluded that that type of provision did not automatically prevent borrowed-employee status from arising.
 
 Id.
 
 at 678. Instead, the parties’ actions in executing the contract could impliedly modify or waive the express provision.
 
 Id.
 

 Here, we find that the parties’ actions did, indeed, modify the contract which purported to prohibit borrowed-employee status.
 

 |RIn
 
 Brown,
 
 the court determined that a factual dispute existed regarding whether the contract provision was modified. Id. There, the court expressed concern regarding the discrepancy in the evidence and the contract provision which purported to prohibit borrowed-employee status. Brown presented evidence that he did not work alongside Union employees; that Union employed its own workers during the day and contract labor during the night; and that Union did not provide contract labor with Union’s handbooks and safety manuals. Brown offered that evidence to show consistency with the contract provision — namely, that he was not Union’s borrowed employee.
 

 In this case, however, Mr. Musa did work alongside Northrop Grumman employees. In fact, on the day of his injury, he testified that at least one of Northrop Grumman’s employees was inside the tank in which he was injured. In addition, Mr. Musa received Northrop Grumman’s handbook and safety manual. In fact, he signed a form which stated:
 

 I have received copies of Avondale Industries, Inc, Shipyards Division’s Safety Rules and Regulations Handbook, and The Avondale Employee Guidebook Excerpts Applicable to Subcontract Employees, it is now my responsibility to make myself aware of their contents.
 

 Because Mr. Musa worked alongside Northrop Grumman’s employees, was able to use Northrop Grumman’s tools, infra, and was given a copy of Northrop Grumman’s handbook and safety manual, this Court finds that Northrop Grumman did not treat Mr. Musa any differently from its own employees. Consequently, their actions impliedly modified the contract which purported to prohibit borrowed-employee status.
 

 Bid
 
 the employee acquiesce?
 

 The fourth
 
 Ruiz
 
 factor considers whether the employee acquiesced in the new work situation. The focus of this factor is whether the employee was aware of |9his work conditions and chose to continue working in them.
 
 Brown, supra,
 
 at 678. Here, Mr. Musa worked exclusively at Northrop Grumman for seven months and was, in fact, aware of the precise danger that caused his injury.
 
 [4]
 

 Furthermore, he testified and stated in his brief, that he answered an advertisement in which International Marine sought to fill positions at locations other than Northrop Grumman. Therefore, he had prior knowledge that International Marine loaned employees to other companies.
 

 We find this factor favors borrowed-employee status.
 

 
 *249
 

 Was there severance with original employer?
 

 Next, we consider whether International Marine severed its relationship with Mr. Musa while he was assigned to Northrop Grumman. This factor, however, does not require the lending employer to completely sever its relationship with the employee, because to do so would effectively eliminate the borrowed-servant doctrine.
 
 Capps, supra,
 
 at 618. Rather, the focus is on the lending employer’s relationship with the employee while the borrowing occurs.
 
 Id.
 

 Although International Marine’s relationship with Mr. Musa was still intact, the ties were minimal — at best. Their involvement with Mr. Musa was purely administrative — issuing his weekly paychecks. Accordingly, we find this factor favors borrowed-employee status.
 

 Who furnished tools ?
 

 The sixth
 
 Ruiz
 
 factor considers who furnished the tools and place of employment. The nature of Mr. Musa’s work onboard the ARCO did not require the customary tools of the trade because he was employed as a quality control inspector. Nonetheless, he testified that his tools, other than a flashlight which he supplied himself, consisted of an ink pen and clipboard that were both provided by | ^Northrop Grumman. He further testified that if he needed a harness, he checked it out of Northrop Grumman’s tool room. This factor, likewise, weighs in favor of borrowed-employee status.
 

 What was the duration of the employment?
 

 The seventh
 
 Ruiz
 
 factor considers whether the employment was over a considerable length of time. Where the length of the employment is considerable, this factor supports a finding that the employee is a borrowed employee.
 
 Brown, supra,
 
 at 619. Here, Mr. Musa worked for Northrop Grumman for seven months pri- or to his injury. He worked at Northrop Grumman exclusively during this time. Therefore, we find this factor weighs in favor of borrowed-employee status.
 
 (See, Conner, supra,
 
 where court found that employee who worked at borrowing employer for four months was a borrowed employee).
 

 Who had the right to discharge?
 

 The proper inquiry under the eighth
 
 Ruiz
 
 factor is which employer has the right to terminate the employee’s services with the borrowing employer.
 
 Capps, supra,
 
 at 618. Here, Northrop Grumman clearly had the right to discharge Mr. Musa from its site. In fact, Mr. Musa testified that his immediate supervisor, Mr. Whittington, had the authority to fire him, thereby satisfying the eighth
 
 Ruiz
 
 factor.
 

 Who had the obligation to pay?
 

 The ninth, and last
 
 Ruiz
 
 factor, considers who bore the responsibility to pay Mr. Musa. Northrop Grumman maintained a log of the hours Mr. Musa worked; however, the record reflects that his checks were issued by International Marine. Identical procedures existed in
 
 Capps, Conner,
 
 and
 
 Brown, supra.
 
 And, on this factor, each of those courts found in favor of borrowed-employee status.
 

 Mr. Musa argues, however, that even if he was Northrop Grumman’s borrowed employee, Northrop Grumman is not immune from tort liability because | nthey did not pay the LHWCA benefits. To support this position, Mr. Musa relies on
 
 West, supra,
 
 for the proposition that the only employer who is immune from tort liability is the employer who has actually paid the LHWCA benefits. We must point out, however, that the proposition on which Mr. Musa relies comes from Judge Tate’s con
 
 *250
 
 curring opinion which is not representative of the majority’s holding in that case.
 

 In
 
 West,
 
 the plaintiff who was hired by Berry Brothers [the subcontractor], sustained injuries in a gas explosion during the course and scope of his employment at the Kerr-McGee facility [the contractor]. He subsequently filed suit against Kerr-McGee and others. The defendants filed motions for summary judgments which were all granted. The United States Fifth Circuit Court of Appeal reversed the summary judgments and determined that the 1984 amendment to the LHWCA did not eliminate the borrowed-employee doctrine.
 

 Although Judge Tate agreed that the summary judgment should have been reversed, he felt that the court should have done so on a broader statutory ground. In his mew, the borrowed-servant tort immunity which had been judicially granted to general contractors vanished "with the 1984 amendments, specifically with 38 U.S.C.A. § 905(a) which provides:
 

 For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor’s employees only if the subcontractor fails to secure the payment by section 904 of this title.
 

 In Judge Tate’s view, the 1984 amendments were specifically intended to clarify that “a general contractor enjoyed no tort-immunity as to work-injuries sustained by a subcontractor’s employee, where that subcontractor had ... secured the payment to the injured employee of compensation benefits accorded him by the Act.”
 
 Id.
 
 at 534.
 

 112The majority, on the other hand, held that the 1984 amendments did not eliminate the borrowed-servant doctrine. In the majority’s view, to interpret § 905(a) as foreclosing, “any designation of any contractor as the employer of its subcontractors’ employees-even if a borrowed-employee relationship existed-unless the subcontractor failed to secure compensation payments,” would render the cases explaining the borrowed-employee doctrine obsolete.
 
 Id.
 
 at 530-1. Rather, the majority interpreted the amendment to mean that the “shall be deemed” language of the § 905(a) amendment referred only to “ ‘deeming’ a contractor the employer of a subcontractor’s employee when the contractor is not the employee’s true employer as well.”
 
 Id.
 
 at 531. The majority, therefore, held that if the contractor was the employee’s employer under the borrowed-servant doctrine, the contractor was thus hable for § 904(a)
 
 [5]
 
 compensation and had § 905(a) immunity.
 
 Id.
 
 After determining that the 1984 amendments did not abolish the borrowed-servant doctrine, the majority in
 
 West
 
 applied the
 
 Ruiz
 
 factors, as we have already done here, to determine whether the plaintiff was a borrowed employee.
 

 Accordingly, we find that the
 
 Ruiz
 
 factors overwhelmingly show that Mr. Musa was Northrop Grumman’s borrowed employee. Mr. Musa worked exclusively at Northrop Grumman for seven months. Northrop Grumman exercised control over Mr. Musa in that they supervised him, provided him with his daily assignments, and had the authority to terminate his services. Northrop Grumman kept a log of Mr. Musa’s work hours and provided him Avith the tools necessary to perform his job. Accordingly, we find that no genuine issues of | ^material fact exist regard
 
 *251
 
 ing his status as a borrowed employee and that the trial court did not err in granting the motion for summary judgment.
 

 Second Assignment of Error
 
 — Incomplete
 
 Discovery
 

 In his second assignment of error, Mr. Musa argues that the trial court abused its discretion when it ruled on the motion for summary judgment before discovery was completed. To support this argument, Mr. Musa cites La. C.C.P. art. 966(C) which provides, “after adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.” This Court has found, however, that La. C.C.P. art. 966 does not give parties an absolute right to delay a decision on a motion for summary judgment until all discovery is complete.
 
 Pittman v. State Farm Mut. Auto. Ins. Co.,
 
 06-920, p. 10 (La.App. 5 Cir. 4/24/07), 958 So.2d 689, 693. Yet, the law does require that parties be given a fair opportunity to present their claim.
 
 Id.
 

 •At the first hearing on the motion in November of 2009, Mr. Musa argued that the trial court was precluded from ruling on the motion because discovery had not yet been completed. In response, the court deferred its ruling and gave Mr. Musa until February, 2010 to complete discovery. At the rehearing, however, Northrop Grumman argued that Mr. Musa had made no attempt to complete discovery until two weeks prior to the rescheduled hearing date.
 

 It is within the trial court’s wide discretion to render a summary judgment, if appropriate, or to allow further discovery.
 
 Jeanmarie v. Peoples,
 
 09-1059, p. 9 (La.App. 4 Cir. 3/16/10), 34 So.3d 945, 951. The trial court’s decision in this regard should only be reversed upon a showing of an abuse of that discretion.
 
 Id.
 
 (citations omitted).
 

 1 uThe litigation, in this case, has been on-going for over a decade. Nevertheless, during the November 2009 hearing, the trial court exercised its wide discretion and gave Mr. Musa the three additional months that he requested to complete discovery. The fact that discovery was not completed is'not grounds to defer ruling on the motion.
 
 Pittman, supra.
 
 Because Mr. Musa had already been given an opportunity to conduct further discovery, we find that the trial court did not abuse its discretion in ruling on the motion for summary judgment before discovery was completed.
 

 Conclusion
 

 Based on the foregoing, this Court finds that no genuine issues of material fact exist regarding the
 
 Ruiz
 
 factors, and that, as a matter of law, the facts support a finding that Mr. Musa was Northrop Grumman’s borrowed employee. Accordingly, the trial court properly granted the motion for summary judgment.
 

 AFFIRMED
 

 [1]
 

 . Although Mr. Musa's deposition testimony states "Pawnville,” we note that no such city exists. It is likely Mr. Musa said “Hahnville,” which was transcribed as "Pawnville.”
 

 [2]
 

 . Mr. Musa also argues that Northrop Grumman had no legal authority to control him because he was hired to conduct independent quality control inspections on them. However, the record doesn’t substantiate this claim. On the contrary, Mr. Musa testified that Northrop Grumman’s own employees also conducted quality inspections.
 

 [3]
 

 . In his brief, Mr. Musa points to another contract which indicated that the subcontractor was to supply the tools and that Northrop Grumman’s rules and regulations would apply. It is his position that this creates a conflict with the contract mentioned in the body of the opinion; and therefore, creates a genuine issue of material fact. Because we find that the parties’ actions, in this case, modified
 
 any
 
 contract that existed between them, we disagree.
 

 [4]
 

 . Mr. Musa testified in both of his depositions that he reported the dangerous condition which caused his injury approximately two weeks before the accident occurred.
 

 [5]
 

 . 33 U.S.C.A. § 904(a) provides: In the case of an employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and be required to secure the payment of compensation. A subcontractor shall not be deemed to have failed to secure the payment of compensation if the contractor has provided insurance for such compensation for the benefit of the subcontractor.