Olefiad TOUCHET, for and on behalf of his minor son, Offord S. Touchet

v.

The TRAVELERS INDEMNITY COMPANY, Petroleum Offshore Leaseholds, Inc., and Petroleum Leaseholds, Inc.

Civ. A. No. 8893.

United States District Court
W. D. Louisiana,
Lafayette Division.

Sept. 12, 1963.

Hattier, Schroeder & Kuntz, Herman M. Schroeder and Richard A. Kuntz, New Orleans, La., and Arceneaux & Beslin, D. A. Beslin, Rayne, La., for plaintiff.

Davidson, Meaux, Onebane & Donohoe, James E. Diaz, Lafayette, La., for defendants.

PUTNAM, District Judge.

Complainant brings this suit in behalf of his minor son, Offord Touchet (Touchette), for damages for injuries caused by negligence attributed to defendants Petroleum Offshore Leaseholds and Petroleum Leaseholds, Inc. The defendant Travelers is liability insurer for the other two defendants and all three will be collectively referred to as Petroleum. All defendants are non-resident corporations, complainant is a resident of Louisiana and our jurisdiction attaches by virtue of Title 28 U.S.C.A. § 1332 and the Outer Continental Shelf Lands Act, Title 43 U.S.C.A. § 1333 et seq.

The complaint purports to set forth a cause of action for negligence under the laws of Louisiana. It alleges that plaintiff, while an employee of Wam Welders, was working on an offshore oil rig in the vicinity of Eugene Island, in Block 172, and that defendant Petroleum was also performing work on the same oil rig at the same time. Plaintiff's injuries occurred when he was struck by a piece of machinery operated by defendants' employees. He seeks $75,000.00 in damages.

Petroleum has answered setting up numerous defenses, only one of which concerns us at this time, that plaintiff was employed by them at the time of the accident and his exclusive remedy is under the Longshoremen's and Harbor Workers' Act.

■ At the pretrial conference it was stipulated that the issue thus raised would be submitted for decision without the intervention of a jury, upon the depositions of the witnesses and written briefs. On the record thus made, we find the following facts:

1. Wam Welders employed plaintiff as a roustabout oil field worker. This concern contracts to do welding and to furnish labor to oil operators in Louisiana oil fields and to offshore operators as well.

2. The structure in question is a fixed platform in the Gulf of Mexico, well beyond the seaward boundary of the State of Louisiana as fixed by the Submerged Lands Act, 43 U.S.C.A. §§ 1301–1315. It is located on the Outer Continental Shelf as defined in 43 U.S.C.A. §§ 1331–1343.

3. This structure belonged to Phillips Petroleum Company but was operated by Petroleum under agreement with the owner, each party sharing in the production. Petroleum called on Wam for a roustabout crew for a clean up job on the leased structure. Plaintiff was a member of the crew sent by Wam.

4. At the time of the accident, plaintiff had been so engaged for approximately three and one-half to four weeks; all transportation was furnished by Petroleum, he reported for work as directed by Petroleum, his work was performed

under the direction, supervision and control of Fletcher who was Petroleum's supervisory employee on this installation and it consisted of roustabout labor on the floor of the structure or "artificial island", of an unskilled nature.

5. Insofar as the work on the platform was concerned, Fletcher, for Petroleum, was in charge and had authority to discharge complainant from the job at any time.

6. There was no independent contract on the part of Wam Welders whatsoever, and while they also had authority to fire complainant at any time from their employ and could have replaced him with another employee, complete control of the labor performed by plaintiff was in Petroleum.

7. Plaintiff was paid by Wam Welders, the record being silent on whether or not Petroleum reimbursed them actual cost or cost plus a profit.

8. Plaintiff knew of the arrangement made by Wam Welders and Petroleum, took orders from Petroleum's pusher until the time of his injury, and, despite his testimony to the contrary, by his acquiescence and acceptance of the situation for so long a period of time consented to the change of masters.

## CONCLUSIONS

The decisive question before us is whether or not Touchet was an "employee" of Petroleum so as to bring him within the exclusive remedy section of the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 905. We have answered this question in the affirmative.

The Outer Continental Shelf Lands Act, 43 U.S.C.A. §§ 1331–1343, provides specifically that oil field laborers engaged in the work of producing oil or other natural resources from the subsoil or seabed of the Outer Continental Shelf must look to the provisions of the Longshoremen's and Harbor Workers' Act for compensation for injuries sustained while so engaged. As the statute has been interpreted in Pure Oil Co. v. Snipes, 293 F.2d 60, (5 Cir. 1961), Federal, not State, law governs their recovery. In that case, Snipes, an employee of an independent contractor, was permitted recovery for injuries received by him as a result of negligence in the construction of a tank which was a part of the platform and belonged to the owner, Pure, his action being in maritime tort against one not his employer. The Court pointed out in no uncertain terms that this remedy was afforded by the Congress, and did not depend upon traditional lines of distinction between maritime and nonmaritime matters, the author of the opinion, Judge Brown, saying:

"But whether the injuries received in the fall which caused Snipes first to strike the deck of the platform then fall through the open space * * * would, as an academic inquiry on maritime or nonmaritime jurisdiction, constitute a maritime injury under the historic standard of 'the substance and consummation of the occurrence which gave rise to the cause of action' is not decisive. *This is so because the Outer Continental Shelf Lands Act itself reveals that when it is federal, not adjacent state, law to apply, Congress adopted the maritime standards.*" (Emphasis Supplied.)

From this guidepost it is seen that Petroleum clearly falls within the extended definition of "employer" provided for the Longshoremen's and Harbor Workers' Act by 43 U.S.C.A. § 1333(c)(2), in such cases. An analysis of plaintiff's status reveals that he was not an employee of an independent contractor employed to accomplish a desired result in behalf of a principal as is the traditional longshoreman employed by a stevedoring company. He was an oil field roughneck or roustabout whose contract of employment is governed by generally recognized concepts of the master servant relationship. Instead of the state workmen's compensation law governing his injuries, by Congressional enactment for the sake of uniformity of procedure and remedy his compensation act is the Longshoremen's and Harbor

Workers' Act, as extended by 43 U.S.C.A. § 1333(c) (1).

Virtually all jurisdictions recognize the "borrowed" or "loaned" employee doctrine. Originally employed in tort under the doctrine of respondeat Superior as in Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480, (1909), it has come to be given general application in matters pertaining to workmen's compensation and similar remedies. Linstead v. Chesapeake & O. R. Co., 276 U.S. 28, 48 S.Ct. 241 (1928), 72 L.Ed. 453, Annotation 1 A.L.R.2d 302, 306, for cases falling under the Federal Employers' Liability Act; Louisiana Workmen's Compensation Law and Practice, Malone, § 57, § 361, and cases collected in footnotes; note, Workmen's Comp.-Borrowed Servant, 18 La.Law Rev. 923; 99 C.J.S. Workmen's Comp. § 47 et seq., p. 241, 35 Am.Jur. Master and Servant, § 18 p. 445. No fixed test to determine this relationship has been evolved; it must, of necessity, depend' upon the facts of each particular case. The most decisive factors for consideration, however, are the consent of the employee pro hac vice to work under the borrowing master, with control and direction over details of the work being exercised by the latter. We find both to exist here.

This case is not to be confused with the cases decided under the "unique Louisiana policy" embodied in the Louisiana Workmen's Compensation Act, LSA–R.S. 23:1061, found in Kent v. Shell Oil Company, et al., 286 F.2d 746 (5 Cir. 1961). This proposition was rejected in the Snipes case, supra. Nor is this a case of an employee of an independent contractor injured through the negligence of the principal as was found in Snipes. This right of action against such a third person is specifically reserved to offshore oil field employees by Title 33 U.S.C.A. § 933.

We find that the plaintiff Touchet was a "borrowed" or "loaned" employee of defendant Petroleum at the time of his injury. As such he was entitled to the benefits of the applicable compensation statute against this employer, subject to the limitations imposed thereby. The exclusive remedy afforded by Title 33 U.S.C.A. § 905 is such a limitation and this suit must be dismissed. On this score we are in full agreement with our brother of the Eastern District, Judge Ainsworth, in Ross v. Delta Drilling Co., 213 F.Supp. 270 (E.D.La.1962). See Goodart v. Maryland Casualty Co., 139 So.2d 567 (La.App.1962), to the same effect.

Having thus disposed of plaintiff's action, discussion of his suit against Travelers under the Louisiana Direct Action Statute, LSA–R.S. 22:655, is unnecessary. We are constrained to say, however, that this statute cannot be given extra-territorial effect. See Guess v. Read, 290 F.2d 622 (5 Cir. 1961).

Appropriate judgment will be signed on presentation.