**Beulah Voisin CHAMPAGNE, Administratrix of the Estate of Paul John LeBlanc**

v.

**PENROD DRILLING COMPANY,**
**Aetna Casualty & Surety Company,**
**Intervenor.**

**Civ. A. No. 13800.**

United States District Court,
W. D. Louisiana,
Lafayette Division.

Aug. 5, 1971.

Martzell & Montero, New Orleans, La., for plaintiff.

Christovich & Kearney, New Orleans, La., for defendant.

Voorhies, Labbe, Fontenot, Leonard & McGlasson, Lafayette, La., for intervenor.

EDWIN F. HUNTER, Jr., District Judge.

This case was tried to the Court. We enter findings and conclusions:

## FINDINGS OF FACT

1. Terrebonne Welders employed Paul LeBlanc, deceased, as a welder and general construction worker. Terrebonne performs welding as a contract welding organization and also furnishes welders on an hourly basis to perform welding services for customers in the oil field and offshore drilling industry.

2. On or about March 7, 1968, LeBlanc and three others were sent to work on a stationary platform known as Penrod No. 31, owned by defendant Penrod Drilling Company.

3. Penrod is a drilling contractor engaged in the drilling, exploration and development of mineral resources both on land and offshore.

4. At all pertinent times Penrod was in the process of erecting a fixed platform in the Gulf of Mexico on the Outer Continental Shelf off the coast of Louisiana. Once the platform was constructed, Penrod placed on top of the fixed structure a drilling rig designated as Rig 31, and when fully set up drilling operations were to commence for petroleum from the sea bed and submerged lands on the Outer Continental Shelf, in accordance with the Submerged Lands Act, 43 U.S.C.A. § 1301–1343.

5. While engaged in the construction of the platform and erection of Rig 31 aboard said platform it became necessary for Penrod to engage the services of additional workmen to complement its crew to carry on the erection work.

6. Penrod called several welding companies and was finally able to secure four welders from Terrebonne. Mr. Landry, President of Terrebonne, was not in the office at the time the call came from Penrod, but was notified by his

office that Penrod needed welders. Mr. Landry sent four men in response to Penrod's request, namely, Sylvester Verret, Jr., Horace Eschete, Edward Stevens, and Paul LeBlanc. These men were taken from a contract job which was being completed and sent to Penrod because of the desire expressed by the four men that if their employer could find some work for them offshore they would like to be so employed. No foreman or supervisor was sent with the welders and they were told that they were to take their orders and instructions from Penrod's personnel for whom they would be working.

7. The men took no equipment of their own or of Terrebonne Welders because Penrod had its own equipment.

8. The men were transported by boat from the dock and arrived at the rig at 5:30 P.M. on March 7, 1968. They were transported by a Penrod crew boat. After eating and changing clothes they reported to Kenneth Bryant, one of Penrod's tool pushers, who instructed them as to what work was to be done by whom, and where they were to work. They were instructed also that once they completed the work to which they were assigned by Bryant that they were to report back to him for further assignment.

9. Before the work which was assigned could be completed, Paul LeBlanc, husband of petitioner, was involved in a fatal accident when a section of timber fell from overhead, striking him on the forehead. The timber board, approximately 3" x 12" x 8', fell through an open hole.

10. There was no written contract between Penrod and Terrebonne. The key issue is whether deceased was a borrowed employee of Penrod. If he was such an employee, then he would be entitled to the benefits of the Longshoremen's and Harbor Workers' Act against Penrod, subject to the limitations imposed. The exclusive remedy afforded by 33 U.S.C.A. § 905 is such a limitation. Touchet v. Travelers Indemnity Company (W.D.La.1963), 221 F.Supp. 376; Ross v. Delta Drilling Company (E.D.La. 1962), 213 F.Supp. 270.

11. Various criteria have been considered in determining whether the doctrine of "borrowed", "loaned", or "rented" employee is applicable. No one factor is decisive. No fixed test is used to determine the relationship. The following have been given greater weight:

A. Control of the employee.

B. Control over the work.

C. Some type of agreement, understanding or meeting of the minds between borrower, lender and employee.

D. Whose tools are used.

E. Whose work is being performed.

F. The duration of the employment.

G. The right to discharge and the obligation to pay. Ruiz v. Shell Oil Company (5th Cir., 1969), 413 F. 2d 310.

12. Against this background, these findings are made:

(a) There was acceptance of responsibility for control over LeBlanc by Penrod and relinquishment of that control by Terrebonne.

(b) At the time of the accident Penrod was undertaking to carry out its own work activity with its own personnel, and when those personnel were no longer sufficient in number to complete the work in a reasonable time, they supplemented their work crew by hiring or renting additional employees. The work being performed was Penrod's work. Penrod exercised complete and absolute authoritative direction and control over decedent as he performed Penrod's work.

(c) The understanding between Terrebonne and Penrod was that Terrebonne was to supply Penrod with personnel only, and no supervisors. The arrangement is similar to that of a union hall supplying laborers or workmen to a contractor engaged in a construction project. The welders involved were aware of the transfer of authority to Penrod over them, impliedly consented to that transfer of authority, and willingly performed the duties for their new employer.

(d) Terrebonne furnished no equipment. Penrod Drilling had its own weld-

ing equipment, its own supplies, and it was this equipment and these supplies that Mr. LeBlanc and his co-workers were utilizing at the time of the accident.

(e) The work being carried on was the work of Penrod and not of Terrebonne.

(f) The Terrebonne personnel were hired for an indefinite period of time. They were to live aboard Penrod's platform and were to work a schedule of hours as directed by Penrod personnel on Penrod's schedules, just as all other Penrod personnel were to work. They were not contract welders. They were, in effect, "rented" to Penrod for an indefinite period of time.

(g) When it came to the work of Penrod which the Terrebonne Personnel were performing on Penrod's rig, Penrod had absolute discretion to discharge any of the welders sent by Terrebonne. Penrod reimbursed Terrebonne for the wages Terrebonne paid these men. In addition, Penrod paid Terrebonne for the use of these personnel. In essence, the wages of Mr. LeBlanc and his co-workers were paid by Penrod, even though they received their checks from Terrebonne.

13. By any standard or measure, Mr. LeBlanc and his fellow workers, while working for Penrod in the construction of its platform and the erection of its Rig No. 31, were true borrowed or rented employees, subject to Penrod's full authority to the extent that any individual is subject to the authority of his employer. These welders were aware of the transfer of authority to Penrod over them, and by acquiescence and acceptance consented to the change of employers.

## CONCLUSIONS OF LAW

1. The "borrowed" servant doctrine is well recognized in all jurisdictions. The criteria to be utilized in determining the applicability of the doctrine are the same in Louisiana as in federal law. Ruiz v. Shell Oil Company (5th Cir., 1969), 413 F.2d 310; Standard Oil Company v. Anderson, 212 U.S. 215, 29 S. Ct. 252, 53 L.Ed. 480; B & G Crane Service v. Hooley, 227 La. 677, 80 So.2d 369; Brown v. B & G Crane Service, Inc., La.App., 194 So.2d 746.

2. *The circumstances here cannot be distinguished from those in* Touchet v. Travelers Indemnity Company (W.D.La. 1963), 221 F.Supp. 376, and require a holding that LeBlanc was a borrowed employee of Penrod. Perhaps it is more appropriate to say that Terrebonne loaned or rented these employees to Penrod. In either case the result is the same.

3. As such, LeBlanc was a borrowed or loaned employee and entitled to the benefits of the applicable compensation statute against Penrod, subject to the limitations imposed. The exclusive remedy afforded by Title 33 U.S.C.A. § 905 is such a limitation and this suit must be dismissed. Ross v. Delta Drilling Company (E.D.La.1962), 213 F.Supp. 270; Touchet v. Travelers (W.D.La. 1963), 221 F.Supp. 376.[1]

---

1. The obvious trend of Supreme Court decisions is to provide ever-increasing protection for offshore workers. The vessel owner or the rig owner should not be free to nullify the remedies afforded seamen and other offshore workers by parceling out operations to intermediary employers whose sole business is to take over portions of the ship's or rig's work or by other devices which would strip the men performing the work of equal protection. We would encounter difficulty permitting the deceased here to maintain a Louisiana 2315 cause of action, when Penrod's regular employees doing the same work under the same supervision clearly would not have that right. The borrowed servant doctrine is well embedded in Admiralty. Standard Oil Company v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909). In Hanks v. California Company, D.C., 280 F.Supp. 730, we held that a catering concern's immediate employee, who was chief steward of a crew furnished to an LST owner by the catering concern, was a borrowed servant of the LST owner, so as to be a member of the crew of the vessel for Jones Act purposes.