**Dennis L. CAPPS, Plaintiff-Appellant,**

v.

**N.L. BAROID–NL INDUSTRIES, INC.,**
**Defendant-Appellee.**

No. 85–3681

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 10, 1986.

Charles Hooker, New Orleans, La., for plaintiff-appellant.

Dermot McGlinchey, Frederick R. Campbell, New Orleans, La., for defendant-appellee.

Before GEE, REAVLEY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Plaintiff-appellant Dennis Capps appeals from a summary judgment in favor of the defendant-appellee N.L. Baroid-NL Industries, Inc. (Baroid). Finding no error in the district court's ruling, we affirm.

## I.

Davis and Sons (Davis), a company specializing in the supplying of general laborers to companies in need of temporary help, hired Capps as a laborer on December 5, 1983. On his first day of employment by Davis, December 6, 1983, Davis assigned Capps to work at a Chevron facility; on the next day Davis assigned Capps to work at a Shell facility. On the third day, Davis assigned Capps to work at Baroid's Venice, Louisiana, facility.

Baroid placed Capps and a fellow employee, Joe Woods, under the direct supervision of Dennis Blanchard, a Baroid employee. Blanchard explained to Capps and Woods that their primary job would involve cleaning the Baroid plant. Blanchard showed Capps a bay area where Baroid had stored bags of chemicals and provided him with a pressurized hose to clean the spillage from the bags. Blanchard twice disturbed Capps' clean-up duties; once to have him spend about thirty minutes unloading a barge at the Baroid dock, and the second time to have him assist Woods in moving a marine battery from a storage location to a pump on the dock. After helping place the battery in a box beside the pump, Capps stepped to his left into what he thought was only a puddle of water. Rather than stepping into a puddle, Capps had stepped into a sump hole filled to overflowing with dark gray liquid mud. A grating intended to cover the hole was partially missing, and the mud prevented Capps from seeing either the grating or the absence of a part of it. Capps fell in the hold and struck his hip and back.

Capps, a resident of Alabama, brought a personal injury suit against Baroid, a corporation with its principal place of business in Louisiana, alleging diversity jurisdiction. The district court granted Baroid's motion for summary judgment on the ground that Capps was a borrowed employee of Baroid and, as such, his exclusive remedy against Baroid was compensation pursuant to the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950, and/or the Louisiana Worker's Compensation Act, La.Rev.Stat.Ann. §§ 23:1021–1379 (West 1985 & Supp.1986).[1] Capps appeals the district court's grant of the motion for summary judgment.

## II.

Capps alleges two reasons why the district court erred in granting the motion for summary judgment: (1) the summary judgment evidence does not support the district court's ruling and (2) a 1984 amendment to section 905(a) of the LHWCA abolished the borrowed employee doctrine as it existed prior to 1984.

### A.

Capps first argues that the district court erred in finding the summary judgment evidence sufficient to support its ruling that Capps was a borrowed employee. In *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312–13 (5th Cir.1969), this court suggested nine factors to be evaluated in determining whether the borrowed employee doctrine applies.

(1) Who has control over the employee and the work he is performing, be-

---

1. Both federal and Louisiana law use the same criteria for determining whether an employee is a borrowed employee. *Lorton v. Diamond M Drilling Co.*, 540 F.2d 212, 213 n. 1 (5th Cir.1976) (per curiam) (citing *Champagne v. Penrod Drilling Co.*, 341 F.Supp. 1282, 1285 (W.D.La.1971), *aff'd per curiam*, 459 F.2d 1042 (5th Cir.1972), *cert. denied*, 409 U.S. 1113, 93 S.Ct. 927, 34 L.Ed.2d 696 (1973)).

yond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

While the courts do not use a fixed test and do not decide the issue based on one factor, the courts place the most emphasis on the first factor, control over the employee. *Id.* at 312; *see also Hebron v. Union Oil Co. of California,* 634 F.2d 245, 247 (5th Cir. 1981) (per curiam).

 The district court decides the borrowed employee issue as a matter of law, *Gaudet v. Exxon Corp.,* 562 F.2d 351, 357–58 (5th Cir.1977), and, if sufficient basic factual ingredients are undisputed, the court may grant summary judgment. *Id.* at 358–59. "Appellants cannot generate a factual dispute merely by contesting the conclusions reached by the court, rather they must show that genuine disputes exist over enough determinative factual ingredients to make a difference in this result." *Id.* at 358. We find no genuine issue as to any of the facts concerning each factor; therefore the question for this court is whether the district court erred in finding, on the undisputed facts, that Capps was a borrowed employee. We turn now to a consideration of the relevant factors and the inferences to be drawn from each factor.

The first, and most important, factor is: Who has control over the employee and the work he is performing, beyond mere sug-

gestion of details or cooperation? Baroid clearly had control over Capps and his work. Capps and Blanchard both testified in their depositions that Baroid controlled Capps' work. Capps also testified that Davis gave him no instructions concerning the work he was to perform at Baroid. Thus, the first factor supports the district court's ruling.

The second factor—Whose work is being performed?—can also be answered straightforwardly. All of the work Capps performed furthered Baroid's business. In fact, Davis' business existed solely to furnish employees to other companies so that the employee could perform the work of the borrowing employer. Thus, the second factor also supports the district court.

The third factor asks whether an agreement or understanding existed between the original and the borrowing employer. While Davis and Baroid did not have a written agreement, the facts clearly indicate that an understanding existed. Baroid routinely called Davis and asked for temporary employees when Baroid's business required them. Davis turned the employees over to the complete control of Baroid, indicating an understanding that the employee was Baroid's employee for so long as Baroid needed the employee.

The fourth factor asks whether the employee acquiesced in the new work situation. Since Capps worked for a company that loaned temporary employees, Capps knew Davis would send him into new work situations. Thus, going into new work situations was Capps' work situation. When he went to work for Davis, he acquiesced to the fact that Davis would constantly send him into new work situations.

The fifth factor—Did the original employer terminate his relationship with the employee?—also weighs in favor of the district court's ruling. We do not believe that this factor requires a lending employer to completely sever his relationship with the employee. Such a requirement would effectively eliminate the borrowed employee doctrine as there could never be two em-

ployers. The emphasis when considering this factor should focus on the lending employer's relationship with the employee while the borrowing occurs. In the instant case, Davis exercised no control over Capps while he worked for Baroid and placed no restrictions on Baroid with respect to Capps' employment conditions. Thus, while Capps worked for Baroid, Davis had temporarily terminated its relationship with Capps.

The sixth factor asks: Who furnished tools and place for performance? Capps brought no tools with him to the Baroid plant. Baroid furnished the only tool he used, the pressurized hose. Baroid also furnished the place of performance. As with all the previous factors, this factor also supports the district court's ruling.

The next factor asks whether the employment was over a considerable length of time. Capps' injury occurred on his first day of work with Baroid; therefore, Baroid definitely did not employ Capps for a considerable length of time. However, we believe this factor significant only when the special employer employs the employee for a considerable length of time. In the case where the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true. When the employee's injury occurs on the first day, it does not follow that the employee is not a borrowed employee; therefore, the factor provides a neutral assessment in the instant case. We also note that this court has previously affirmed a finding of borrowed employee status when the employee's injury occurred on the first day of the job. *Champagne v. Penrod Drilling Co.,* 341 F.Supp. 1282, 1284 (W.D.La.1971), *aff'd per curiam,* 459 F.2d 1042 (5th Cir.1972), *cert. denied,* 409 U.S. 1113, 93 S.Ct. 927, 34 L.Ed.2d 696 (1973).

The eighth factor inquires: Who has the right to discharge the employee? Baroid had the right to discharge Capps from his employment at Baroid; however, Baroid could not terminate Capps' employment with Davis. In *Hebron v. Union Oil Co.*

*of California,* 634 F.2d 245 (5th Cir.1981) (per curiam), we affirmed the district court's holding that the plaintiff was a borrowed employee and noted that, while the borrowing employer could not discharge the plaintiff, it had the right to terminate his services with itself. We believe this is the proper focus when considering who has the right to discharge the employee. Since Baroid had the right to discharge Capps from his association with Baroid, this factor also supports the district court's ruling.

The ninth, and last, factor places emphasis on whether the borrowing employer had the obligation to pay the employee. While Davis had the obligation to pay Capps, Davis received the funds to pay Capps from Baroid. Since Baroid paid Davis at an hourly rate for Capps' work, and then Davis paid Capps at a lower hourly rate, Baroid in essence paid Capps. *See Champagne,* 341 F.Supp. at 1285. Because of this fact, the last factor does not detract from the district court's ruling.

■ Since no genuine dispute exists as to any of the basic factual ingredients, the district court could determine the borrowed employee question while ruling on the motion for summary judgment. Our review of the nine factors shows that none of the factors weighs against the district court's ruling and that nearly all the factors support the ruling. We believe that the court reached the right result in finding that Capps was a borrowed employee of Baroid and that the court properly granted the motion for summary judgment.

### B.

■ Capps also argues for reversal on the ground that Congress arguably abolished the borrowed employee doctrine, save for one exception, when amending section 905(a) of the LHWCA in 1984 by adding the following sentence to the end of the section:

For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the pay-

ment of compensation as required by section 904 of this title.

Capps argues that we should interpret the language of the amendment as prohibiting the designation of any contractor as the employer of its subcontractors' employees unless the subcontractor failed to secure compensation payments. Under Capps' interpretation, a borrowed employee relationship could not exist except in the one instance provided for in the amendment.

Our recent holding in *West v. Kerr-McGee Corp.*, 765 F.2d 526 (5th Cir.1985), squarely forecloses Capps argument. In *West* we held that the amendment to section 905(a) does not abolish the borrowed employee doctrine. Capps recognizes that *West* forecloses his argument; however, he urges us to reconsider the issue previously decided in *West*. Were we so inclined, and we are not, we could not decide the issue differently than did the court in *West*, for in this circuit one panel may not overrule the holding of a previous panel. *United States v. Albert*, 675 F.2d 712, 713 (5th Cir.1982). We find Capps' second argument meritless.

We AFFIRM the judgment of the district court.