**J.C. MIMS Plaintiff**

**v.**

**The RENAL CARE GROUP, INC. & Alice Luckett Defendants**

**No. CIV.A3:04CV891DCBJCS.**

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 12, 2005.

Robert F. Wilkins and Barry W. Howard, Jackson, MS, for Plaintiff.

Martin Jelliffe and Meta Copeland, Jackson, MS, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

BRAMLETTE, District Judge.

This matter comes before the Court on the defendants' Motion for Summary Judgment [**docket entry no. 70**]. Having reviewed the Motion, briefs, applicable statutory and case law and being otherwise

fully advised as to the premises, the Court finds as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

In March of 1997, Renal Care Group Mississippi, Inc., a wholly owned subsidiary of Renal Care Group, Inc. ("RCG"), entered into a contract with Douglas, Inc. ("Douglas") for Douglas to provide cleaning services for a number of RCG facilities. The Jackson South facility, located at 2450 Terry Road, Suite 27J in south Jackson, was one of the facilities where Douglas was to provide services under this contract. A detailed checklist of the specific cleaning duties that Douglas was to provide was included as an attachment in the agreement.[1] The contract also included a provision that required Douglas to carry Worker's Compensation insurance.

Pursuant to the agreement, Douglas assigned workers to the various RCG facilities to provide cleaning services.[2] The plaintiff, J.C. Mims ("Mims"), was one such worker who was assigned to clean the RCG Jackson South facility. After being assigned to the Jackson South facility, Mims worked exclusively there. He had a key to the building and was given the code to the RCG alarm system. Mims would generally work from about 4:30 or 5:00 in the afternoon to 10:00 or 11:00 at night and his work was normally not overseen by any RCG employees contemporaneously with its performance. The defendants, however, maintain that RCG employees would evaluate Mims' performance on a regular basis and would note any deficiencies in his janitorial work to Douglas to make sure the work was corrected. *See* Def. Motion for Summ. Judgment, at 3. They further note that while they could not directly terminate Mims' employment, if RCG's management felt that Mims had done something to warrant his being fired, Douglas would have been instructed not to allow him to return to the RCG facility. *See Id.*

Mims alleges that he tripped and fell while taking out the garbage at the RCG Jackson South Facility on June 7, 2003. He sustained a permanent injury to his knee as a result of the fall. Mims claims that the defendants had failed to repair several damaged garbage cans despite numerous prior complaints about them, and that one of the cans had contributed to his injuries. As a result of that incident, Mims filed a Workers' Compensation claim and received benefits under Douglas' insurance policy. Mims also filed a complaint against RCG and Alice Luckett, the

---

1. *See* Agreement dated March 7, 1997 (attached as Ex. C to Def. Motion for Summ. Judgment). The defendants initially maintained that RCG prepared the checklist. *See* Def. Motion for Summ. Judgment, ¶ 2. The plaintiff, however, contends that Douglas drafted and provided the checklist as to what Douglas' employees would do at a particular site. *See* Pl. Response to Motion for Summ. Judgment, at 2. In response, the defendants altered their previous assertion, and now maintain that RCG Construction Manager, Bill Schmidt, was "involved in developing the checklist of cleaning duties." *See* Def. Rebuttal, at 4.

2. The written agreement between Douglas and RCG was executed by the contracting parties on March 7, 1997. By its own terms, the agreement was to be for a one-year term after the service began, with a one-year automatic continuance at the expiration of that term. *See* Agreement dated March 7, 1997. Thus, the written agreement would have technically expired in 1999, four years prior to the occurrence of the events in question in this case. Arguably, then, the contract would have no bearing on the Court's analysis; however, for purposes of ruling on the motion for summary judgment, the Court will assume the 1997 agreement accurately reflects the continuing agreement between RCG and Douglas in 2003.

facility manager of the RCG Jackson South facility at the time of the incident, in state court, alleging that its negligent failure to keep its equipment in good repair caused him injury. The defendants subsequently removed the action to this Court.

## DISCUSSION

### I. Standard for Summary Judgment

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c). The moving party has the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A contested fact is "material" when it has the potential to change the outcome of the case. *Ginsberg 1985 Real Estate P'ship v. Cadle Co.,* 39 F.3d 528, 531 (5th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Id.*

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists. *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir.1994). To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation." *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1449 (5th Cir.1993). The non-movant must "designate specific facts showing the existence of a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252, 106 S.Ct. 2505. Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-movant will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962). By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### II. Dual Employer and Borrowed Servant Doctrines

For the purpose of this Court's ruling on their Motion for Summary Judgment only,

the defendants have conceded that the plaintiff's underlying allegations are true, i.e., that the defendants' negligence caused Mims' injuries. The defendants, however, maintain that even under this assumption they are entitled to summary judgment under the dual employee and borrowed servant doctrines. If Mims is considered to be an employee of or borrowed servant for RCG, then the defendants would be protected under the statutory immunity granted to co-employees and employers under the Mississippi Worker's Compensation Act, Miss.Code Ann. § 71–3–9.

■ Under Mississippi law, an employee may actually be employed by more than one employing entity while performing the same task. *See Biggart v. Texas Eastern Transmission Corp.*, 235 So.2d 443, 445 (Miss.1970) ("An employee may be employed by more than one employer while doing the same work."); *Ray v. Babcock & Wilcox Co.*, 388 So.2d 166, 167 (Miss.1980) ("[W]hen an employee is engaged in the service of two (2) employers in relation to the same act (dual employment), both employers are exempt from common law liability, although only one of them has actually provided workmen's compensation insurance.").

■ The borrowed servant doctrine is closely related to the dual servant doctrine.[3] It provides that "a servant, in general employment of one person, who is temporarily loaned to another person to do the latter's work, becomes, for the time being, the servant of the borrower, although he remains in the general employment of the lender." *Quick Change Oil & Lube, Inc. v. Rogers*, 663 So.2d 585, 589 (Miss.1995).

Because of the similarities between the two doctrines, their applicability to a particular case is very often argued in tandem. *See, e.g., Honey v. United Parcel Service*, 879 F.Supp. 615 (S.D.Miss.1995). As such, the following factors have been identified as important to consider when determining whether or not either of the two doctrines apply:

1. Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

2. Whose work was being performed?

3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

4. Did the employee acquiesce in the new work situation?

5. Did the original employer terminate his relationship with the employee?

6. Who furnished tools and place for performance?

7. Was the new employment over a considerable length of time?

8. Who had the right to discharge the employee?

---

**3.** The distinction between the two doctrines is not altogether clear. Essentially, the dual employment doctrine would normally apply in situations where the employer has sent his worker out with the intent that another person has control over him or her. For example, if a temporary staffing agency sends one of its workers to a law firm to perform secretarial duties for the indefinite future, both the law firm and the staffing agency might be considered "employers" of the worker. On the other hand, a borrowed servant relationship may be found in a situation where the employee has acquiesced to control by another for a temporary period of time. For example, a janitor who cleans at nights at his employer landlord's building, agrees to assist an elevator repair man by raising and lowering the elevator as he directs. In such a case, the janitor may be considered the "borrowed servant" of the elevator repair man.

9. Who had the obligation to pay the employee?

*Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312–13 (5th Cir.1969).

Out of all of these factors, the "right to control" has been earmarked as the most important to consider when deciding whether the borrowed servant or dual employer doctrines apply. *Capps v. N.L. Baroid Indus., Inc.*, 784 F.2d 615, 617 (5th Cir.1986); *Texaco, Inc. v. Addison*, 613 So.2d 1193, 1201 (Miss.1993). The defendants claim that they effectively controlled Mims because RCG dictated what Douglas' custodians were to do in cleaning RCG facilities. The defendants state that such control is demonstrated through the checklist attached to the written agreement between Douglas and RCG that detailed what duties the janitors were to perform for RCG. Additionally, the defendants note that though Mims normally worked alone and no RCG employee observed him performing his duties, RCG employees would evaluate the cleanliness of the facility on a regular basis and contact Douglas to make sure that any deficiencies in Mims' performance was corrected.

Mims, however, argues that he was not a "borrowed servant" of RCG and that that defendant was not his "co-employer" because RCG did not have actual control over the plaintiff. He argues that, at most, the defendants merely supplied him with *information* about how to conduct his job. *See Jones v. James Reeves Contractors, Inc.*, 701 So.2d 774, 781 (Miss.1997) (stating that the mere exchange of information on how to perform a job "is insufficient to establish control necessary to transform [an] independent contractor relationship into a 'loaned servant' relationship").

■ Most telling of the facts related to this Court on the issue of control is that RCG does not maintain that it ever directly confronted Mims about any employment issue. The checklist of cleaning duties that Douglas' employees were to perform at RCG constituted a communication merely between Douglas and RCG. By the defendants' own admission, if RCG had a problem with Mims' work, it would contact Douglas and have it correct the problem. RCG admits that it lacked the power to terminate Mims' employment.[4] All administrative matters relating to Mims' employment were handled exclusively by Douglas, including payment of his salary and provision of worker's compensation insurance. It is clear to this Court that RCG lacked the control over Mims required to show that it had an employment relationship with him. Instead, all the facts indicate that RCG merely had a customer relationship with Mims' employer, Douglas.

Having found that the "right to control" factor heavily favors Mims' argument that RCG was not his employer and that he was not RCG's borrowed servant, the Court need not address the other *Ruiz* factors.[5] The applicability of the borrowed servant or dual employer doctrine is a question of law for the court to decide. *Capps*, 784 F.2d at 617. However, sum-

---

4. The defendants claim, and rightly so, that RCG had the right to keep Mims from working at the RCG Jackson South facility if his performance was found to be lacking. That right, however, offers nothing to indicate that RCG exercised "control" over the plaintiff. After all, RCG has the right, under general property law, to keep almost anyone from going on to its property to work.

5. The Court also declines to address the plaintiff's argument that the defendants waived their right to claim the exclusivity of worker's compensation defense by not pleading it as an affirmative defense prior to their motion for summary judgment.

mary judgment is only appropriate on this issue if "sufficient basic factual ingredients are undisputed ...." *Id.* In this case, Mims has put forth more than ample evidence to demonstrate the inapplicability of the doctrines of dual employment and borrowed servant. Accordingly,

IT IS HEREBY ORDERED that the defendants' Motion for Summary Judgment [**docket entry no. 70**] is **DENIED**;