# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 13, 2009

Charles R. Fulbruge III
Clerk

No. 08-20826
Summary Calendar

GARY JACKSON

Plaintiff-Appellant

v.

TOTAL E&P USA, INC.

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CR-385

Before JONES, Chief Judge, and STEWART and OWEN, Circuit Judges.

EDITH H. JONES, Chief Judge:[1]

Gary Jackson ("Jackson") was injured while working aboard an offshore oil production platform. Because we find that he was a "borrowed employee" under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(a), we affirm the district court's grant of summary judgment and find that suit against Total E&P USA ("Total") is barred.

---

[1] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

# I. BACKGROUND

Jackson was hired as a mechanic by Producers Assistance Corporation ("PAC") in January 2007. Jackson was immediately assigned to work on Total's Virgo platform.

For the next seven months, Jackson worked rotating 14-day hitches. While on the platform, Total provided Jackson with sleeping and bathing facilities in permanent quarters, three meals a day, and a Total uniform bearing his name. Jackson would bring some of his own tools and be provided some specialized tools by Total.

Jackson was the only mechanic onboard. He would receive his assignments through Total's computer system, which automatically created a list of preventative maintenance tasks that needed to be performed. No Total employee oversaw Jackson's work. Rather, Jackson was directed to use his judgment and experience to determine if the computer printout was accurate and, if accurate, which tasks should be completed during a given hitch. Jackson reported his hours to PAC and was paid by PAC.

On September 14, 2007, Jackson was working alongside Total employees in an effort to pull up a large pump from a lower deck. The pump was being pulled by a cable, which was attached to the pump by cable straps. During this process, a strap broke, causing the cable to strike Jackson's legs and throwing him onto his neck and back.

Jackson filed for worker's compensation and was awarded benefits under the LHWCA from PAC and filed this suit against Total for negligence. The district court granted Total's motion for summary judgment, finding that Jackson was a borrowed employee without tort remedies. Jackson appeals.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *See Hoda v. Rowan Cos., Inc.*, 419 F.3d 379 (5th Cir. 2005). Summary judgment is appropriate if the record shows that

there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

Worker's compensation under the LHWCA is the exclusive remedy for an employee against his employer because the Act bars all common law tort actions against the employer. *See Alday v. Patterson Truck Line, Inc.*, 750 F.2d 375 (5th Cir. 1985). If Jackson was the functional employee of Total at the time of his injury, he may only recover under the LHWCA and his negligence suit must be dismissed.

Whether Jackson was acting as an employee of Total is addressed under the "borrowed employee" doctrine. This doctrine was established to hold a borrowing employer liable under *respondeat superior* for the negligence of any employee he had borrowed. *See Standard Oil v. Anderson*, 212 U.S. 215, 29 S. Ct. 252 (1909). Since *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969), this court has employed this doctrine to shield employers from tort liability from their borrowed employees under LHWCA. The doctrine "is the functional rule that places the risk of a worker's injury on his actual rather than his nominal employer." *Hall v. Diamond M Co.*, 732 F.2d 1246 (5th Cir. 1984).

To determine "borrowed employee" status, we consider nine factors: (1) who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation; (2) whose work was being performed; (3) was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer; (4) did the employee acquiesce in the new work situation; 5) did the original employer terminate his relationship with the employee? (6) who furnished tools and place for performance; (7) was the new employment over a considerable length of time? (8) who had the right to discharge the employee; and (9) who had the obligation to pay the employee. *Brown v. Union Oil Co. of Cal.*, 984 F.2d 674, 676 (5th Cir. 1993). Although no one of these factors is decisive, we have stated that "the central question in borrowed servant cases is whether someone has the power to control and direct

another person in the performance of his work." *Hebron v. Union Oil Co. of California*, 634 F.2d 245, 247 (5th Cir. 1981).

Whether borrowed-employee status exists is a question of law for the district court, though in some cases factual disputes must be resolved before the district court can make this determination. *See Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 n.13 (5th Cir. 1988). The district court found that "[f]or all purposes, Jackson was a Total employee at the time of the accident."

After reviewing the record, we agree with the district court. Jackson was the definition of a "borrowed employee." Of the factors listed in *Brown*, (1), (2), (4), (6), and (7) all support this finding and the other factors are, for the most part, neutral to it.

Under these facts, PAC was essentially operating as a placement agency. PAC did not create the environment in which Jackson worked, and it was not responsible for Jackson's working conditions. Jackson received his pay check from PAC, but all of his work was directed by and for the benefit of Total. Despite Jackson's attempt to rely on any contractual provisions at issue, parties "cannot automatically prevent a legal status like 'borrowed employee' from arising merely by saying in a provision in their contract that it cannot arise." *Id.* at 1245.

Obviously, PAC did not relinquish all connection with Jackson. The first factor concerning control "does not require a lending employer to sever completely its relationship with the employee, because such a requirement would effectively eliminate the 'borrowed employee' doctrine." *Id.* at 1246 (*quoting Capps v. N.L. Baroid-NL Industries*, 784 F.2d 615, 617-18 (5th Cir. 1986)). Rather, the court must focus on "the lending employer's relationship with the employee while the borrowing occurs." *Id.* Here, as in *Melancon*, PAC's control over Jackson was nominal at most while Jackson worked for Total.

Indeed, Total provided Jackson with work assignments through Total's computer system to be performed on Total's platform and equipment. Jackson

clearly acquiesced to the situation. He was aware of his work conditions and chose to continue working in them. *See Brown v. Union Oil Co.*, 984 F.2d 674, 678 (5th Cir.1993) (finding that an employee had acquiesced after one month of working prior to an accident). Jackson brought coveralls and some small tools, but Total provided many tools and ordered specialized tools requested by Jackson. Total also provided Jackson with food, sleeping quarters, bathing facilities, petty cash for shoe purchases, and a Total uniform with his name on it. Finally, we note that this work situation continued for eight months, which we believe to be a considerable length of time.

In sum, we find that the *Brown* factors compel the conclusion that Jackson was a borrowed employee under the LHWCA.

### III. CONCLUSION

For the foregoing reasons, the judgment is **AFFIRMED.**