# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2020

Lyle W. Cayce
Clerk

No. 19-40580

Milorad Raicevic,

*Plaintiff—Appellant*,

*versus*

Fieldwood Energy, L.L.C.; Shamrock Management, L.L.C., *doing business as* Shamrock Energy Solutions,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:15-CV-327

Before Smith, Willett, and Duncan, *Circuit Judges*.

Per Curiam:*

After injuring his back while working on Fieldwood Energy's offshore platform, Milorad Raicevic sued Fieldwood (and the platform operators) for negligence. The jury found that Fieldwood was the only defendant that was negligent, attributing 50% of the responsibility to the company. The jury

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

attributed the other 50% to Raicevic. After trial, and before entering judgment, the district court requested further briefing on Fieldwood's defense under the exclusive-remedy provision of the Longshore and Harbor Workers' Compensation Act. The district court entered judgment for Defendants (including Fieldwood) because it found that Raicevic was Fieldwood's borrowed employee, and thus the LHWCA's exclusive-remedy provision gave Fieldwood tort immunity. Because we agree that the LHWCA was Raicevic's exclusive remedy, we affirm.

## I

Waukesha Pearce Industries, Inc. (not a defendant in this case) employed Raicevic as an offshore platform mechanic beginning in 2008. While still employed by Waukesha Pearce, Raicevic worked on Fieldwood's offshore platform located on the outer continental shelf in the Gulf of Mexico. Almost a year into working (and sleeping) on Fieldwood's platform, Raicevic awoke after midnight to an alarm blaring in the mechanic's room. Raicevic slipped and fell twice, due to oil that had leaked on the floor, while trying to address the mechanical issue that triggered the alarm.

Raicevic suffered back injuries that necessitated various treatments, including surgery, physical therapy, and steroid injections. Raicevic received coverage for these treatments through Waukesha Pearce's workers' compensation benefits, but it is unclear whether the benefits came from state plans or the LHWCA.

Raicevic sued Fieldwood and the platform operators for negligence. Fieldwood countered that Raicevic was its borrowed employee, so various workers' compensation schemes, including the LHWCA, precluded Raicevic's tort claim. Raicivec filed a motion in limine to bar any discussion of workers' compensation insurance at trial, and the district court granted the motion.

No. 19-40580

At trial, the jury found that Fieldwood and Raicevic were each 50% responsible for Raicevic's injuries. The jury also made special findings about the factors that a court weighs to decide borrowed employee status. But because of the motion in limine, the jury made no findings about any other issues related to Fieldwood's LHWCA defense.

After trial, but before entering judgment, the district court requested further briefing on Fieldwood's LHWCA defense. The post-trial briefing focused on two necessary conditions for the LHWCA to apply and thus bar Raicevic's negligence claim: (1) Was Raicevic Fieldwood's borrowed employee? and (2) Did Fieldwood secure workers' compensation benefits under the LHWCA? Considering the jury's findings on the factors of borrowed-employee status and the post-trial briefing, the district court concluded that both conditions were met. Accordingly, the court rendered judgment for all defendants because the LHWCA gave Fieldwood tort immunity, and the jury found that the other defendants were not negligent. Raicevic now appeals, challenging the district court's two findings on the LHWCA defense.

## II

After a trial, we review questions of law de novo, "while questions of fact are reviewed for clear error." *Anne Harding v. Cty. of Dallas*, 948 F.3d 302, 306–07 (5th Cir. 2020). So here, we review anew the core legal question: whether Raicevic was Fieldwood's borrowed employee. *See Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993). And we review for clear error the key factual finding: that Fieldwood secured benefits under the LHWCA.

## III

Under the Outer Continental Shelf Lands Act, an employee's exclusive remedy for a work-related injury is the LHWCA. 43 U.S.C. § 1333(a)(1) and (b); 33 U.S.C. § 905(a). This means that, if applicable, the

LHWCA would preclude a tort action like Raicevic's. But this exclusivity provision only applies to (1) employers who (2) "secure payment of compensation" under the LHWCA. 33 U.S.C. § 905(a). Raicevic argues that Fieldwood cannot satisfy either requirement.

## A

Turning first to the question of Raicevic's employer, Fieldwood must show that Raicevic was its borrowed employee in order to have tort immunity under the LHWCA. *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1243 (5th Cir.), *amended on reh'g in part sub nom. Melancon v. Amoco Prods. Co.*, 841 F.2d 572 (5th Cir. 1988). To determine whether an employee is a "borrowed employee," we consider the nine factors articulated in *Ruiz v. Shell Oil Company*:

1. Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?
2. Whose work was being performed?
3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
4. Did the employee acquiesce in the new work situation?
5. Did the original employer terminate his relationship with the employee?
6. Who furnished tools and place for performance?
7. Was the new employment over a considerable length of time?
8. Who had the right to discharge the employee?
9. Who had the obligation to pay the employee?

413 F.2d 310 (5th Cir. 1969); *see also Melancon*, 834 F.2d at 1244.

These nine factual inquiries underlie borrowed-employee status, but the ultimate determination of whether an employee is a borrowed employee is a question of law for the court to decide. *Melancon*, 834 F.2d at 1244.

The district court submitted these nine questions to the jury. And the parties acknowledge that the jury's findings do not point uniformly in one direction. After considering the jury's findings and the parties' post-trial briefing on the issue, the district court determined that Raicevic was Fieldwood's borrowed employee. Raicevic now challenges that determination; he does not challenge the jury's factual findings.

Determining borrowed-employee status, particularly in the LHWCA context, is a complex question of law. *Gaudet v. Exxon Corp.*, 562 F.2d 351, 358 (5th Cir. 1977). A court must consider not only the nine factors, "but the implications to be drawn from" them. *Id.* And "in different cases, [] certain of these factors may be more important than others, at least in the light of the facts [] before the court." *Alday v. Patterson Truck Line, Inc.*, 750 F.2d 375, 376 (5th Cir. 1985).

Further, we originally created the nine-factor test in the respondeat-superior context. *See Gaudet*, 562 F.2d at 356. But in the LHWCA context, the test is not used to impute liability but "to escape it through the exclusive remedy provisions." *Id.* As we have explained:

> Although the coverage of the LHWCA is not contractual and does not depend upon the consent of the parties, nonetheless when an employee begins work for an employer under the coverage of the LHWCA, he is presumed to have consented to the Act's trade-off of possibly large common law damages for smaller but certain LHWCA benefits. And by the very act of continuing in employment, he may be assumed to agree that, considering the likelihood of injury and the likely severity of injury within the working conditions he experiences, the benefits offered by the LHWCA in the event of injury are acceptable.

*Id.* So in assessing the nine factors, we focus on whether the employee has consented (implicitly or explicitly) to this statutory trade-off.

No. 19-40580

With that focus in mind, we now briefly review the nine factors. And we conclude that Raicevic was Fieldwood's borrowed employee, although we do so for reasons somewhat different from those given by the district court.[1]

We start with the easier factors in this case. The jury's findings as to factors 2, 4, and 6—that Raicevic was performing Fieldwood's work, Raicevic acquiesced in the work situation, and Fieldwood provided the tools and place of work—clearly favor Fieldwood (borrowed-employee status). But the jury's finding as to factor 5—that Waukesha Pearce did not terminate its relationship with Raicevic prior to his injury—favors Raicevic (no borrowed-employee status).

For the remaining factors, there is considerable dispute about the implications we should draw from the jury's findings.

*Factor One.* The jury found that Fieldwood did not have control over Raicevic's work beyond merely suggesting details. Raicevic argues that the

---

[1] While the district court came to the correct conclusion, it did so via an improper interpretation of our cases. The court gave a thorough overview of our caselaw discussing how to weigh the nine factors and noted that our decision in *Gaudet v. Exxon Corporation* stated that factors 4–7 were "most pertinent when the borrowed employee doctrine is used as a defense to common law liability in the LHWCA context." 562 F.2d at 357. So far so good. But then, the district court analyzed only those four factors, claiming that the other five factors were not "essential" and treating them as if they were completely disposable. *Gaudet* does not support this nor, as Raicevic points out, do the cases that followed. In *Gaudet*, we said that looking at factors 4–7 was a "suggested focus within" the nine-factor test. *Gaudet*, 562 F.2d at 359. And since *Gaudet*, we have repeatedly stated that out of the nine factors, no single factor or combination of them is determinative. *Brown v. Union Oil Co.*, 984 F.2d 674, 676 (5th Cir. 1993); *Fontenot v. Mobil Oil Expl. & Producing Se., Inc.*, 997 F.2d 881 (5th Cir. 1993) (per curiam) (stating that *Gaudet*'s holding was that the nine "factors are to be weighed as appropriate in each particular case"); *Mosley v. Wood Grp. PSN, Inc.*, 760 F. App'x 352, 359 n.8 (5th Cir. 2019) (per curiam). We have also said that "in many of our prior cases," the first of the nine factors—who controlled the employee's work—was "central" to the analysis even though *Gaudet* "deemphasized" this factor. *Brown*, 984 F.2d at 676. While determining how to weigh the nine factors will depend on the facts of the case, no factor can be categorically excluded from the analysis.

jury's finding should weigh in his favor because Waukesha Pearce, not Fieldwood, told him to work on Fieldwood's platform; no one from Fieldwood told him exactly how to do the repairs; and his direct supervisor was a Waukesha Pearce field service manager. Fieldwood, on the other hand, argues that it told Raicevic what to inspect on the platform, and when and where to conduct those inspections; two Fieldwood employees supervised Raicevic—Raicevic even claimed that one was the "best boss" he ever had; and the Waukesha Pearce supervisor was never on Fieldwood's platform and didn't provide any guidance as to Raicevic's actual work for Fieldwood.

In the LHWCA context, we have previously rejected the arguments Raicevic makes and held that the arguments Fieldwood makes indicate borrowed-employee status. *See, e.g.*, *Melancon*, 834 F.2d at 1245 (holding that control factor favored borrowed-employee status where employee took orders from borrowed employer about what work to do and when and where to do it). We thus conclude that the jury's finding—that Fieldwood didn't control Raicevic—does not preclude, or even necessarily weigh against, borrowed-employee status.

*Factor Three.* The jury found, and no one disputes, that Waukesha Pearce and Fieldwood had a written agreement that said Raicevic was an independent contractor, not Fieldwood's employee. But even Raicevic acknowledges that this type of contract "does not automatically prevent borrowed employee status." *Brown v. Union Oil Co.*, 984 F.2d 674, 677–78 (5th Cir. 1993). The parties' actions can waive or modify an independent-contractor provision. *Id.* And we have previously found an independent-contractor agreement modified by the parties' behavior when there is evidence showing that all parties understood that the employee "would be taking his instructions from" the borrowed employer. *Melancon*, 834 F.2d at 1245. The jury's finding that there was a contract says nothing about whether the parties modified or waived that contract.

Here, there is evidence that Raicevic took instructions from and was supervised by Fieldwood employees. Raicevic admitted that he had to follow Fieldwood's instructions and get Fieldwood's permission for major repairs. Raicevic counters only that the contract itself is clear, and that the jury's finding that Fieldwood didn't control Raicevic suggests that there was no waiver or modification. Without deciding whether the parties modified the contract, we hold that the evidence demonstrating Fieldwood's supervision of and instruction to Raicevic is enough to make this factor neutral. In other words, the existence of the contract does not counsel against finding borrowed-employee status.

*Factor Seven.* We have often found that the length of the new employment is a neutral factor unless the new employment lasted for years. If it did, that favors borrowed-employee status. *Mays v. Dir., Office of Workers' Comp. Programs*, 938 F.3d 637, 646 (5th Cir. 2019) (collecting cases). The jury found that Raicevic's one year on the Fieldwood platform was not a "considerable" length of time. But in the LHWCA context, one year seems long enough to accept the risks of the job and consent to the statutory trade-off of receiving benefits in lieu of the possibility of winning a tort suit. Thus, this factor tilts in Fieldwood's favor (borrowed-employee status).

*Factors Eight and Nine.* The jury found that Fieldwood did not have the right to discharge or the obligation to pay Raicevic, suggesting that these last two factors weigh in favor of no borrowed-employee status. But as Fieldwood points out, we weigh these factors differently in the LHWCA and respondeat-superior contexts.

As to the right to discharge—factor eight—the focus is on whether Fieldwood had the right to "terminate [Raicevic's] services" for Fieldwood, not whether it had the right to terminate his employment in general. *Capps v.*

*N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 618 (5th Cir. 1986). Because Fieldwood had the right to remove Raicevic from working on its platform at any time, factor eight favors borrowed-employee status.

The obligation to pay—factor nine—does not focus on who paid Raicevic. The more helpful question is: Where did the funds originally come from? *Id.* Here, Fieldwood paid Waukesha Pearce for Raicevic's work, then Waukesha Pearce paid Raicevic. That is enough to skew the factor in Fieldwood's favor. *See Melancon*, 834 F.2d at 1246.

All in all, only one factor (five) plainly favors Raicevic. We therefore agree with the district court that Raicevic was Fieldwood's borrowed employee, meaning Fieldwood can invoke the LHWCA as a bar to Raicevic's tort claim unless any exceptions apply.

B

One exception to LHWCA tort immunity is relevant here. Raicevic's tort claim is not barred if Fieldwood "fail[ed] to secure payment of compensation as required by" the LHWCA. 33 U.S.C. § 905(a); *Total Marine Servs., Inc. v. Dir., Office of Worker's Comp. Programs*, 87 F.3d 774, 778 (5th Cir. 1996). The parties did not submit this issue to the jury, so the district court made a fact finding under Federal Rule of Civil Procedure 49(a)(3). *See also Taherzadeh v. Clements*, 781 F.2d 1093, 1100 (5th Cir. 1986) ("In the absence of a demand by the parties that an issue be submitted, and if such issue is omitted, [Rule 49(a)] allows the Court to make its own findings on the omitted issue.").

The district court found that Fieldwood had LHWCA workers' compensation insurance at the time of Raicevic's injury, and therefore Fieldwood could invoke the LHWCA as a bar to Raicevic's tort claim. As noted above, we review the district court's factual finding for clear error. *Heck v. Triche*, 775 F.3d 265, 282 (5th Cir. 2014).

Raicevic argues that the question is not just whether Fieldwood had LHWCA insurance, but whether any employer (Waukesha Pearce or Fieldwood) paid Raicevic benefits specifically under the LHWCA. Raicevic also says that the district court erred because the post-trial evidence Fieldwood submitted on the issue was untimely. Both arguments fail.

We have never directly addressed Raicevic's first argument—that to invoke the LHWCA as a defense, an employer must prove not just that it had LHWCA insurance, but that it paid benefits under that insurance to the employee. As the language of the LHWCA and our cases show, that standard is too demanding. In *Thibodeaux v. J. Ray McDermott & Company*, the employee argued that the employer failed to "secure payment of compensation" because it did not properly post the required notice about the LHWCA. 276 F.2d 42, 46 (5th Cir. 1960). We held that even assuming the notice was inadequate, the employer had purchased LHWCA insurance, and that's all it needed to do to "secure payment." *Id.* The statute contains specific provisions about "how and in what manner an employer shall comply with the obligation to secure payment of compensation." *Id.* In other words, the statute makes clear what it means to "secure payment"—buy insurance or receive approval to pay compensation benefits directly. 33 U.S.C. § 932(a). *See also Melancon*, 834 F.2d at 1247 n.17 ("There is no requirement that tort immunity under § 905(a) attaches only to an employer who actually pays for his employees' worker's compensation (i.e. the premiums for the worker's compensation insurance coverage).").

Here, the evidence showed that both Fieldwood and Waukesha Pearce had LHWCA insurance at the time of Raicevic's injury. That is

No. 19-40580

enough for Fieldwood to invoke the LHWCA's exclusive-recovery provision.[2]

Finally, the district court's consideration of Fieldwood's post-trial evidence was proper. The parties did not submit the issue of workers' compensation insurance to the jury. In fact, Raicevic filed a motion in limine, which the district court granted, to bar any discussion of workers' compensation insurance at trial. So after trial, the district court asked for further briefing on these issues, and Fieldwood submitted an affidavit with its briefing to prove it had LHWCA insurance at the time of Raicevic's injury. Raicevic points to no cases that would prohibit the court, as the factfinder on this issue, from considering the post-trial evidence and briefing. The district court committed no error.

IV

Because we find that Fieldwood has tort immunity, the district court correctly entered judgment for the Defendants. We AFFIRM.

---

[2] It appears that just two district courts have addressed this issue, and both have found that securing payment means only obtaining LHWCA insurance. *Birkenbach v. Nat'l Gypsum Co.*, No. 13-14607, 2014 WL 2931795, at *5 (E.D. Mich. June 30, 2014); *In re Natures Way Marine, LLC*, 984 F. Supp. 2d 1231, 1243 (S.D. Ala. 2013). "The LHWCA provides that the employer must secure payment of compensation, and binding case law explains this as the long-range method whereby the employer satisfies the Department of Labor that it can, that is, *it has the potential,* to pay compensation payments when/if required to do so under the Act. The LHWCA does not place any additional burden on the employer to immediately and actually make compensation payments to individual injured employees." *See In re Natures Way Marine*, 984 F. Supp. 2d at 1243 (emphasis in original).